(31 Misc. Rep. 411.)

### BRADY v. BRADY et al.

(Supreme Court, Special Term, Onondaga County. May, 1900.)

1. MINES AND MINERALS—DEED—RESERVATION OF MINERALS—CONSTRUCTION.
    The owner in possession of lands covered with limestone ledges rising above the natural surface of the ground, having some timber thereon and some tillable land, but the chief value of which was manifestly the stone thereon, conveyed the same by warranty deed, excepting and reserving from the grant "all mines and minerals which may be found on the above piece of land, with the right of entering at any time" to dig and carry away the same. *Held*, that though to construe the exception as referring, under the title of minerals, to the rock, would practically destroy the grant, the exception comprehended the rock, and reserved the title thereto in the grantor.

2. ADVERSE POSSESSION—WHAT CONSTITUTES—NONUSER OF RIGHT OF ACCESS TO LAND.
    Where a grantor conveyed land containing limestone ledges, reserving from the grant the minerals in the granted premises, and the right to enter to dig and carry away the same, the grantor's heirs are not deprived of their title to the minerals by the fact that the grantees have been in possession for a period sufficient to acquire title by adverse possession, and occasionally burnt a little of the lime deposits on the premises.

**8. EASEMENT—NONUSER.**
　　Mere nonuser of the right of access does not deprive the grantor or his
　　heirs of such right, where there is no adverse user of the rights reserved
　　by the grantee.

Action for partition by Hannah Brady against Mary Brady and others. Sale of property and distribution of proceeds ordered.

Charles S. Mereness, for plaintiff.

Charles L. Griffin, for defendants Phelps.

A. E. Kilby, for defendant the Oswegatchie Quarry Company.

Purcell, Walker & Burns, for defendants Smith and Sullivan.

Edward J. Boshart, for infant defendants.

ANDREWS, J. On February 18, 1852, John La Farge, being then the owner in possession of 100 acres of land in the town of Diana, Lewis county, N. Y., conveyed the same by a warranty deed to one Margaret Lewis. In this deed, however, there were excepted and reserved "all mines and minerals which may be found on the above piece of land, with the right of entering at any time, with workmen and others, to dig and carry away the same." On March 28, 1859, Margaret Lewis, by a warranty deed, conveyed the same premises to James Garrett. In this deed there were contained no reservations or exceptions. On October 23, 1865, James Garrett conveyed the premises, also by warranty deed, to John Ackerman, Sr., and Stephen Ackerman; reserving and excepting, however, "all mines and minerals that may be found on the above premises, with the right of entering at any time to search for and dig and carry away said minerals." On November 14, 1870, John Ackerman conveyed his undivided interest in the premises to Stephen Ackerman; reserving "all mines and minerals, with the right to work and carry away the same." On June 2, 1873, Stephen Ackerman conveyed the premises by warranty deed to Edward C. Ackerman, which deed contained no reservation or exception. On April 1, 1874, Edward C. Ackerman conveyed a portion of the premises, containing 59 acres, to Charles L. Blood; reserving "all mines and minerals, with the right to dig, work, and carry away the same." On May 28, 1880, Charles L. Blood conveyed 20 of his 59 acres to Thomas Brady; excepting and reserving "all mines and minerals (more especially the limestone bed) found within the bounds of the above-described lot, with full and absolute right of way across said premises to and from mines, minerals, and bed of limestone, with men and teams, to mine minerals and limestone, and also the right to occupy all the necessary surface ground for the burning and manufacture of said lime and storing the same." On May 31, 1880, the same Charles L. Blood again conveyed the same premises to Thomas Brady. This deed, however, containing the following reservation: "Excepting and reserving unto the party of the first part all mines and minerals in the same manner the same are excepted in former conveyances of the above-described premises." On June 1, 1884, Thomas Brady and wife mortgaged the last-described premises to P. Vidvard; the mortgage containing the same exception as in the first Blood deed, above mentioned. After the death of Mr. Vidvard, his wife, as executrix, assigned this mortgage to Charles

P. Leonard. The latter began a foreclosure on June 30, 1887, and the premises mortgaged were on October 1st in the same year sold to Mary Brady, the widow of Thomas. Thomas Brady died in the year 1886, intestate. As has been said, his wife, Mary Brady, survived him, and he left three children,—Hannah, the plaintiff, and Gertrude and Blanche; the last two being still under age. On November 25, 1892, Mary Brady executed a lease of said premises for the term of 50 years to James W. Carpenter and James A. Phelps, "excepting and reserving mines and minerals as specified in the original conveyance," but granting to them the right "to dig, mine, quarry, use, remove, appropriate, and convert to the sole use and benefit of the parties of the second part, their heirs and assigns, all and any marble, stone, or other valuable material or substance to be found on, in, or under said lands, with the right to enter upon, erect, maintain, operate, use, remodel, or remove any buildings, machinery, or other structures that the said parties of the first part may desire." The right to cultivate the land not occupied was reserved to the lessor. She was to receive as compensation 20 cents for every cubic yard of stone removed. On December 26, 1893, the above lease was assigned to the Oswegatchie Quarry Company, and on June 25, 1895, the latter company made a sublease for a period of 20 years to the Metropolitan Marble Company. The latter company has become insolvent, and is represented in this action by its receiver, Phelps. On January 4, 1894, Mary Brady and the plaintiff, Hannah Brady, who was then an infant over the age of 14 years, joined in a petition for the sale of a limestone or marble quarry situated on the premises conveyed by Blood to Brady, and stated to be the property of the infant heirs of Thomas Brady. A referee was appointed subsequently to take proofs and report, and he made his report on February 14, 1894. Upon this report an order was made for the guardian to make a proper contract, and in accordance with this order a written contract was made on February 14, 1894, by Mary Brady individually, and as special guardian of her children, with the defendant Rebecca Phelps, for the sale of the whole 20 acres for the sum of $2,400; $200 being payable on the execution of the contract, $1,200 on May 1, 1894, and the balance secured by a mortgage. So far as the infants' interest was concerned, however, the contract was made subject to the approval of the court. The purchaser seems to have made the first payment, of $200, and on May 1, 1894, the special guardian reported to the court that she had made a contract of sale to Rebecca Phelps. She stated that, of the total sum of $2,400, the share of the infants was to be $750. No order confirming this contract has ever been made. On the same day the parties to the contract, by a written agreement, extended the time for its performance to July 30, 1894, and this is the last transaction between them. On October 1, 1898, Mary Brady conveyed an undivided half of the said premises, excepting and reserving the limestone bed, to the plaintiff. The will of John La Farge was admitted to probate in the year 1858. By it he gave and devised to his wife, who has since died, during the term of her natural life, one-third part of his real estate, and bequeathed all the rest and residue of his prop-

erty to his children. By a deed recorded August 6, 1898, certain of the descendants of La Farge, who obtained title under this will, conveyed to the defendant Smith their right, title, and interest in an undivided $4/35$ share of the mineral rights upon the 20 acres before referred to; and he, in turn, later made an agreement with the defendant Sullivan, permitting the latter to enter upon the premises, and dig for and carry away the minerals found thereon. The 20 acres in question are largely covered with limestone or granite ledges, rising above the natural surface of the ground. There is, it is true, some timber and some tillable land, but probably the chief value of the property consists in this stone. To obtain this material a quarry has been opened. The plaintiff claims that she and her sisters, subject to their mother's right of dower, are the owners of this limestone or granite bed, and that she and her mother each own an undivided half of the remainder of the premises, and that she is entitled to a decree of partition in this action. She also states that the other defendants claim some interest in the property, and she asks to have the rights of all the parties fixed and determined. With this end in view, and upon the consent of all the parties, an order was made bringing in certain defendants not originally sued. The defendants Sullivan and Smith in their answer claim that the rights to the granite or limestone quarry were reserved in the deed from La Farge to Lewis; that Smith is a tenant in common of the same with the heirs of La Farge, not parties to this action; and that as such tenant in common he had a right to give to Sullivan the authority to remove the material. Rebecca Phelps claims that, under the infancy proceedings and the contract, she is the equitable owner of, and is entitled to receive a conveyance of, the entire property, subject to the Phelps and Carpenter lease, upon paying the balance of the purchase price. The defendants Carpenter and Phelps, the Oswegatchie Quarry Company, and the Metropolitan Marble Company claim that, under the lease made by Mary Brady, they are rightfully entitled to possession of the land and the quarry for a period of 50 years from the date of the lease. As a matter of fact, the defendant Sullivan seems to be in actual possession of the quarry. Upon this state of facts, I have reached the following conclusions:

1. Under the La Farge deed, the ownership of the limestone and granite upon the 20 acres in question, and the right to enter, dig for, and carry away the same, remained in the grantor, and passed to his children under his will. Armstrong v. Granite Co., 147 N. Y. 495, 42 N. E. 186; Hext v. Gill, 7 Ch. App. 699. The material, clearly, is a mineral, and it is reserved from the grant unless "the nature and context of the deed show that it was not intended to be included" in the reservation. There is nothing to justify such a finding. The only claim that can be made is that the ledges of rock were so apparent, and covered so large a portion of the original 100 acres, that the parties could not have referred to them; that to except them would practically destroy the grant. Yet it may equally well be said that the knowledge that this mineral existed was the very reason that a reservation was inserted in the deed. Nor was the land worthless except for the stone upon it. Much of the 100 acres seems to

have been ordinary farming land, and even the 20 acres, as is shown by the sale under the Vidvard mortgage, and the contract with Mrs. Phelps, was valuable for agricultural purposes.

2. The title of the heirs and grantees of La Farge to the granite and limestone, as well as the right of access thereto reserved, has not, so far as appears in this case, been lost by adverse possession or by abandonment. There has been nothing like an open, notorious, continuous possession of the mines and minerals hostile to the rights of the true owners. The possession of the land by Margaret Lewis and her grantees was entirely consistent with the reservation. And the fact that the lime was occasionally burnt upon the premises is insufficient to sustain such defense. As to the right of access, the most that can be said to have been shown is mere nonuser, and this is not enough. Conabeer v. Railroad Co., 156 N. Y. 474, 51 N. E. 402.

3. While Smith, as the grantee of the La Farge devisees, is the owner of an undivided share of the limestone or granite bed, she and her licensee, Sullivan, may still be exercising their rights improperly. It is at least doubtful whether they may remove the material by means of open quarrying, or in such a way as to disturb the surface. Armstrong v. Granite Co., 147 N. Y. 495, 42 N. E. 186; Hext v. Gill, 7 Ch. App. 699; Railway Co. v. Robinson, 15 App. Cas. 19, 27; Attorney General v. Granite Co., 35 Wkly. Rep. 617. In both Hext v. Gill and Attorney General v. Granite Co., the word "dig" had been used. This question, however, is not properly before the court in this action, and may be ignored here. Whatever the precise rights of Smith and Sullivan, the plaintiff has no title to the stone, and as to them the action must be dismissed.

4. By the foreclosure of the Vidvard mortgage in 1887, Mary Brady became the owner of the 20 acres, less the mines and minerals reserved. This, as we have seen, she leased to Phelps and Carpenter, reserving the use of the buildings on the premises, in 1892, and the right to cultivate the land not used or required by them in their business operations. It is true that on the face of the instrument it is apparent that the parties made the contract chiefly with reference to the quarry rights, which were not in fact transferred. But neither Mrs. Brady nor her successor in title is in a position to claim that therefore the lease was void, or could be avoided by them.

5. By the contract of 1894, Mrs. Brady agreed to sell her interest in the land, subject to the Phelps and Carpenter lease, to Mrs. Phelps. This agreement was distinct from the agreement as to the supposed interests of the infants, and is perfectly valid. Still, in view of all the circumstances, I am disposed to hold, as a matter of fact, that the parties have rescinded this contract. Ballard v. Walker, 3 Johns. Cas. 60.

6. Consequently the plaintiff and Mary Brady are each the owner of one undivided half of this 20 acres, less the mines and minerals thereon, subject to the rights of Phelps and Carpenter, their assignees and sublessees, under the lease of November 25, 1892.

7. Apparently it is conceded that no actual partition of this property can be made. Therefore the plaintiff is entitled to the usual

interlocutory judgment for' its sale, subject to the interests of the lessees just referred to.

8. The plaintiff may. be paid her taxable costs out of the proceeds of such sale, but, under the circumstances, no costs should be awarded to any of the other parties herein.

Findings in pursuance of this opinion may be prepared, and, if not agreed upon, will be settled by me upon proper notice. Ordered accordingly.