### PHELPS v. CHURCH OF OUR LADY, HELP OF CHRISTIANS.

(Circuit Court of Appeals, Third Circuit. May 22, 1902.)

No. 5.

1. MINERALS—EXCEPTION IN DEED—MARBLE.

Under the law of New York as settled by its court of appeals, marble in place is a "mineral," and the title thereto does not pass by a conveyance of the land which excepts and reserves to the grantor all mines and minerals which may be found therein.

2. ASSUMPSIT—IMPLIED CONTRACT—DEFENSES.

In a jurisdiction where the rule prevails that a defendant in trover may defeat recovery by showing the ownership and right of possession of the property sued for in a third person, the same defense is available where the plaintiff elects to waive the tort and sue in assumpsit to recover the value of the property.

3. SAME—TO RECOVER VALUE OF PROPERTY CONVERTED—TITLE OR POSSESSION TO SUPPORT.

Under the law of New York a lease of land for a term of years, with the right to dig, quarry, and use "all or any marble, stone, or other valuable material substance" found therein, but which excepts and reserves "mines and minerals as specified in original conveyance," where the deed under which the lessor holds title expressly excepted and reserved therefrom all mines and minerals found in the land, conveys to the lessee no title to marble in place in the land, and will not support an action of assumpsit by the lessee to recover the value of marble quarried and removed from the land by another at a time when plaintiff was not in possession.

In Error to the Circuit Court of the United States for the District of New Jersey.

Robert H. McCarter, for plaintiff in error.
David H. McClure, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge.  The case presented to us upon the former writ of error was that of an action brought by the receiver of a company which had the right of property in the marble contained in a tract of land in the state of New York to recover the value of marble quarried from the land by a mere trespasser, who acted for and delivered the marble to the defendant.  This statement is fully borne out by the opinion of the court.  40 C. C. A. 72, 99 Fed. 683. Speaking of the indenture made November 25, 1892, between Mrs. Mary Brady, the party of the first part, and James W. Carpenter, Jr., and James A. Phelps, the parties of the second part, the court said: "According to all the authorities, this deed operated to convey an estate in the land for the specified term of fifty years, and its legal effect was to pass to the parties of the second part and their assigns a right of property in the stone and other valuable substances contained in the land."  The Metropolitan Marble Company, whose receiver is prosecuting this action, claims under the above-recited deed by virtue of a sublease from the assignee of the term.  Of Sullivan, who quarried the marble, the court, in its former opinion, said:  "Sullivan appears in the light of a mere trespasser, who had been in the temporary unlawful occupancy of the premises;" and the court added:  "The case, as presented by this record, is not one of conflicting titles to the land.  It will be observed that at the time the court gave peremptory instructions against the plaintiff the defendant had not put in any evidence whatever."  We have no reason to doubt the soundness of the principles laid down by this court on the former occasion, or the correctness of the judgment pronounced by us upon the facts then presented.

At the second trial of the case a different state of facts was developed.  In the first place, it was made to appear (for reasons about to be stated) that the receiver's company, the Metropolitan Marble Company, had no right of property in the marble contained in the land.  And, secondly, it was shown that, after the Metropolitan Marble Company had suspended work at the marble quarry, Mrs. Mary Brady and her three daughters executed a written lease of the quarry to the Reverend John P. Callaghan, the rector of the Church of Our Lady, Help of Christians, and that the entry of Sullivan upon the land was made and the marble was quarried and taken away under and in pursuance of this lease to Father Callaghan.  The title of Mrs. Mary Brady to the tract of land in question originally came from John La Farge, who, together with his wife, by deed dated February 15, 1852, conveyed the land to one Margaret Lewis.  That deed contained the following exception and reservation:  "Excepting and reserving therefrom unto the parties of the first part, their heirs and assigns, forever, all mines and minerals which may be found on the above piece of land, with the right of entering at any time with workmen and others to dig and carry the same away." Succeeding deeds in Mrs. Brady's chain of title contained a similar exception and reservation clause.  Furthermore, the above-mentioned indenture of November 25, 1892, whereby Mrs. Brady demised and leased the tract of land to James W. Carpenter, Jr., and James A. Phelps for a term of 50 years, contained the clause following:  "Ex-

cepting and reserving mines and minerals as specified in original conveyance." And, finally, the sublease of June 25, 1895, by the assignee of the term, the Oswegatchie Quarry Company, to the Metropolitan Marble Company (the plaintiff company), contained the same exception and reservation, namely, "Excepting and reserving mines and minerals as specified in original conveyance." Since our judgment upon the former writ of error, the supreme court of New York, in the case of Brady v. Brady, 31 Misc. Rep. 411, 65 N. Y. Supp. 621, has held that the ownership of the marble in the tract of land conveyed by the above-mentioned deed of John La Farge remained in him by virtue of the exception and reservation of "mines and minerals" contained in his deed. In so holding the supreme court followed the interpretation which the court of appeals of the state of New York gave to the word "minerals" in a grant or reservation in its opinion in the case of Armstrong v. Granite Co., 147 N. Y. 495, 42 N. E. 186, 49 Am. St. Rep. 683. The land here in question is in the state of New York, and the instruments before us are to be construed in accordance with the law of that state as expounded by its courts. Under the decision in the two above-cited New York cases it is clear that neither Mrs. Brady, nor her lessees, Carpenter and Phelps, nor the Metropolitan Marble Company, the sublessee, took any title to the marble in this land, but that the right of property therein remained in John La Farge. It should be noted that no such point was made, discussed, or considered when the case was here before. Now, not only does the present record disclose that the Metropolitan Marble Company had no ownership of the marble in place, but the proofs establish these further facts, namely: That the marble sued for was not quarried by the plaintiff or his company, and was never in the possession of either, and that during the whole time occupied in the mining and removal of it the Metropolitan Marble Company was out of possession of the quarry, and Father Callaghan was in the actual possession thereof under his lease from Mrs. Brady and her daughters. Instead of bringing trover, the plaintiff, waiving the supposed tort, sued in assumpsit for the value of the marble which was so mined and afterwards was used by the defendant in the erection of its church building at East Orange, in the state of New Jersey. Upon the indisputable facts now appearing, can the plaintiff recover in this action? It may, we think, be affirmed with great confidence that by the law of the forum, in such circumstances as exist here, a defendant in trover could defeat the action by showing the right of property in the chattels sued for to be out of the plaintiff, and in a third person. Glenn v. Garrison, 17 N. J. Law, 1. This is the general rule, and it is supported by sound reason; for, if the action could not be defeated by showing that the title to the articles was at the commencement of the suit in a third person, the defendant might be compelled to pay for the same property again to such third person, he being a stranger to the first suit. Ekstrom v. Hall, 90 Me. 186, 192, 38 Atl. 106. This rule undoubtedly applies to a case such as this, where the plaintiff elects to sue in assumpsit for the value of the articles converted. Now, it is true, as shown by Northam v. Bowden, 11 Exch. 70, and

other cases cited by counsel for the plaintiff in error, that possession of property may give sufficient title to maintain an action for its conversion against a mere wrongdoer. But in the present case the plaintiff shows no possessory title. The mined marble which is the subject of this suit never was in the possession of the plaintiff or his company. Moreover, when this marble was mined and taken away, the plaintiff's company was not in possession of the land from which it was quarried. It was mined and removed by one who was in the actual, open, exclusive, and peaceable possession of the quarry, claiming it by color of title at least. The marble, after it was mined, was no more the property of the plaintiff or his company than it was when in situ.

Whether or not Mrs. Brady is precluded from denying the right of her lessees, Carpenter and Phelps, and those claiming under them, to quarry marble from the land embraced in her lease, is a question not material here. This is not an action to recover damages for the disturbance of a supposed mining right. The action is upon the common counts in assumpsit, and proceeds upon an implied promise by the defendant to pay the value of the marble it used. A right of property in the receiver's company, or at least a possessory title, is the very basis of the action.

We cannot see upon what principle the defendant is estopped from availing itself of the defense that the plaintiff's company had no ownership whatsoever in the marble, the value of which is sued for. This lack of ownership, be it observed, appears not alone by the showing of the defendant, but is a fact inherent in the plaintiff's case, and demonstrated by his own proofs.

The learned judge below, without ignoring the fact that the ownership of the marble in the land remained in John La Farge under the exception and reservation in his deed, and without detracting from the importance of the fact, put his binding instruction in favor of the defendant rather upon the ground that the title to real estate was involved in the suit. But whether or not, by the two leases executed by Mrs. Brady,—the first to Carpenter and Phelps, and the second to the Reverend John P. Callaghan,—the title to land was drawn in controversy in such a sense as to deprive the court of jurisdiction to try the case, is a question upon which it is not necessary for us to pass. While we are of opinion that the direction given to the jury to find a verdict for the defendant was right upon the whole evidence, we prefer to put our determination distinctly upon the ground that neither the Metropolitan Marble Company nor its receiver had any right of property in or title to the marble sued for, either while it was in place or after it was quarried.

The judgment of the circuit court is affirmed.