## Kalberer et al. v. Grassham.

March 22, 1940.

C. H. Wilson, Judge.

Charles Ferguson for appellants.

C. C. Grassham for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—Affirming.

This appeal involves the question of whether a certain mineral deed included therein a sandstone rock quarry as a "mineral" in contemplation of the parties to the deed. The deed, the construction of which is in-

volved, was executed in the year 1888 by R. H. McQuire and his wife Laura B. McQuire, grantors, to the Livingstone County Mineral Land & Improvement Company of Smithland, Ky., grantee. The deed so far as is pertinent reads as follows:

"For and in consideration of Two Thousand Three Hundred and Ninety Four Dollars in the Capital stock of the Livingston County Mineral Land and Improvement Co. of Smithland, Ky., we R. H. McQuire and Laura B. McQuire his wife, have sold and by their presents, convey unto the Livingston County Mineral Land and Improvement Company, of Livingston County, Kentucky, all the minerals of every kind and character, except the coal and natural gas and coal oil, including the right of way to open said minerals in the following tract or parcel of land lying in Livingston County, Kentucky: and bounded on the North by the Cumberland River, on the West by Jack Guthrie's place, on the South and east by the Ford land, containing Three Hundred and Forty Two acres.

"But the parties of the first part do retain as their own, all the surface of the said land, and all the coal or natural gas or coal oil in or under said land, but convey all other minerals in same to the parties of the second part—the party of the second part agrees not to interfere with the farming interest of the parties of the first in said land.

"To have and to hold said minerals to the said Livingston County Mineral Land and Improvement Company, heirs and assigns forever, with covenant of 'General Warranty.' "

By mesne conveyances appellant became the owner of the soil, or all that was retained by the grantor McQuire, and appellee became the owner of all the minerals and other rights vested in the grantee by the McQuire deed. A controversy arose between appellant and appellee as to whether the McQuire deed included as a mineral, a certain sandstone quarry from which appellant was quarrying and shipping sandstone, claiming to be the owner of same as having been retained to the grantor under the McQuire deed, and appellee, plaintiff below, claiming to be the owner of the sandstone quarry

under the McQuire deed, contending that the deed conveyed the sandstone quarry as a mineral, brought this action to have the question determined, and prayed that she be adjudged the owner of and entitled to the sandstone and other minerals not specifically reserved in the deed and that her title thereto be quieted.

Various pleadings were filed and the evidence taken, but the evidence related only to certain property lines to determine whether or not the McQuire deed included the sandstone quarry in controversy. However, by stipulation of the parties the only question submitted to the court below, and the only one before us, is the construction of the McQuire deed. The articles of incorporation of the Livingston County Mineral Land and Improvement Company (hereinafter called the Corporation) is filed as an exhibit to the petition. The articles of incorporation authorized the Company to engage in various and divers businesses, including the right and power to "develop and operate any mines or minerals or stone contained in any lands the said corporation may at any time own or acquire possession of and sell the ores, coal, stone, or anything else of value taken therefrom. Shall have the power to erect and operate furnaces for the reduction of ores. Shall have power to manufacture coke and quarry or manufacture stone and sell the products of said furnaces, coke, stone quarries."

The case was submitted to the court and the chancellor reached the conclusion that in the circumstances surrounding the making of the McQuire deed it was the understanding and intention of all the parties that the sandstone quarry in controversy was conveyed in said deed as a mineral, subject to the restrictions that the farming interest in the surface is not interfered with, and judgment was entered accordingly, from which the appellants have prosecuted this appeal.

The word "mineral" is not a definite term and is susceptible of limitations or extensions according to the intention with which it is used and each case must be decided on the language of the instrument, the surrounding circumstances and intention of the grantor. McKinney's Heirs v. Central Kentucky Natural Gas Co., 134 Ky. 239, 120 S. W. 314, 20 Ann. Cas. 934; Brady v. Smith, 181 N. Y. 178, 73 N. E. 963, 106 Am. St. Rep. 531,

2 Ann. Cas. 636. And it is the general rule that a conveyance or exception of "minerals" in a deed or lease includes all mineral substances which can be taken from the land, and to restrict the meaning of the term there must be qualifying language or circumstances evincing that the parties contemplated something less general than all substances legally cognizable as minerals. Phelps v. Church, 3 Cir., 115 F. 882, 53 C. C. A. 407; Lovelace v. Southwestern Pet. Co., 6 Cir., 267 F. 513; Kentucky Diamond Min. & Devel. Co. v. Kentucky Transvaal Diamond Co., 141 Ky. 97, 132 S. W. 397, Ann. Cas. 1912C, 417.

In the present case the word "minerals" is used in a broad sense. The deed purports to convey "all the minerals of every kind and character, except the coal and natural gas and coil oil * * *" without other qualifying words or restrictions.

In the case of Horse Creek Land & Mining Co. v. Midkiff, 81 W. Va. 616, 95 S. E. 26, 27; 17 A. L. R., Ann. p. 158, the rule is thus stated:

"The term 'mineral,' when employed in conveyancing in this state, is understood to include every inorganic substance which can be extracted from the earth for profit, whether it be solid, as stone, fire clay, the various metals and coal, or liquid, as, for example, salt and other mineral waters and petroleum oil, or gaseous, unless there are words qualifying or limiting its meaning, or unless from the deed, read and construed as a whole, it appears that the intention was to give the word a more limited application."

Also in the English case of Hext v. Gill, L. R. 7, Ch. 699, 17 Eng. Rul. Cas. 429, it is stated that according to the weight of authorities a reservation of minerals includes every substance which can be got from underneath the surface of the earth for the purpose of profit, unless there is something in the context or in the nature of the transaction to induce the court to give it a more limited meaning. See Annotation, 17 A. L. R. 158.

In Hartwell v. Camman, 10 N. J. Eq. 128, 64 Am. Dec. 448, it was held that "paint stone" passed under a conveyance of mines and minerals, the court saying:

"Can this stone paint, then, be fairly and naturally

embraced in the term 'mineral'? It is a body which is destitute of organization, and which naturally exists within the earth. It is below the surface; distinct from the ordinary earth. It is in strata, and is worked by the ordinary means of mining.''

In McCombs v. Stephenson, 154 Ala. 109, 44 So. 867, 868, the deed there involved conveyed ''all the coal, ores, and other minerals and metals in, under, and upon the land &ast; &ast; &ast;.'' The question involved in that case was whether or not ''shale'' was included as a mineral in the language quoted above, and the court held it was so included. The court said:

''By the term 'mineral' are meant all the substances in the earth's crust which are sought for, and removed by man, for the substance itself. It is not limited to metallic substances, but includes salt, coal, clay, stone of various sorts, etc., and even petroleum and natural gas have been held to be minerals. 20 Am. & Eng. Ency. Law (2d Ed.) p. 683. There is no evidence of any usage to show that the word 'minerals' was used in any other sense than as it is defined in the books. We think, then, that unless there are some qualifying words in the instrument, showing a contrary intent, the conveyance in this case included the shale in question.''

For the purpose of the question involved here we do not see any distinction between shale and sandstone, since each is a class of stone and may be used for commercial purposes, or, as said in McCombs v. Stephenson, supra, are sought for and removed by man for the substance itself.

It is thus seen that the word ''minerals'' may in a particular case have a different meaning, more extensive or more restricted, but such different meaning depends upon the language of the grant or reservation, the surrounding circumstances and intention of the grantor if it can be ascertained. 18 R. C. L. 1094.

In Dingess et al. v. Huntington Development & Gas Co., 4 Cir., 271 F. 864, it is said:

''Under the settled law of West Virginia that the word 'mineral' is not capable of a definition of universal application, but is susceptible of limitation

according to the intention of the parties using it to be ascertained from the language of the deed, the relative position of the parties, and the nature of the transaction, where a controversy over the title to land was settled by a conveyance of the land by one party to the other, who was in occupancy of the surface, with a reservation of 'all the minerals, mineral substances, and oils of every sort and description,' with the right to mine, bore wells, and use so much of the surface as required in operating mines or wells, the reservation held to include natural gas.''

The rule enunciated in the West Virginia case, supra, appears to be in harmony with our domestic cases and other authorities generally. The definition of the word ''mineral'' by all the authorities includes rock, but as will be seen from the authorities supra, the word ''mineral'' as commonly used in mineral deeds, may or may not include rock of any character—depending upon the language used in the grant and the surrounding circumstances of the parties.

In Rudd v. Hayden, 265 Ky. 495, 97 S. W. (2d) 35, 36, by the terms of the deed the conveyance included:

''All minerals, coal, clays, spars, oilgases and every other kind and character of mineral cement, oil, gases, &c not included in the above general description, in on and under the after described land, together with the exclusive right to mine same and a right of way across said premises and ingress and egress over said land, for the purpose of operating any mine or mines and privilege of using water in their operation and in fact the full mining right and privilege in and to the following described land, viz.''

It appears that the use of the words ''mineral cement'' in the deed in that case was one of the principal factors upon which the case was decided, since cement is a substance containing the chemical ingredients to be found in limestone. While the use of the words ''mineral cement'' was given considerable weight, yet it is not the sole ground upon which the case was determined. Quoting from the case of Beury v. Shelton, 151 Va. 28, 144 S. E. 629, cited in the Rudd case, supra, it is said:

"It is a well-known fact, and known of course to the parties to the deed here involved, that the section where this deed was to operate was a limestone country, where the land is everywhere underlain with limestone, and where it crops out on practically every tract of land that is not bottom land, and where it makes its appearance in manner varying from huge cliffs, as in the case here, to small outcroppings on various parts of the land. It is on the land everywhere, either breaking through it, or lying under it at different depths. In this country it is a part of the soil, and a conveyance that reserves the limestone with the right to remove it would reserve practically everything and grant nothing."

The language last quoted above is peculiarly applicable to the present case. The McQuire deed expressly excepted coal, natural gas and coal oil, the character or type of minerals more likely to be found and more commonly known to exist in that community, and if the reservation be extended by implication to rock quarries and other like substances, then practically everything would be reserved and nothing granted. In Berry v. Riess, 276 Ky. 114, 121 S. W. (2d) 942, 945, it is said:

"It will be presumed that the parties intended to create mutual and enforceable obligations in favor of each other by the language they employed in their contract, rather than to accomplish nothing thereby."

Another strong circumstance worthy of consideration for the conveyance is that McQuire accepted the full consideration of $2,394 in stock in the Corporation. It is not reasonable to presume that McQuire would have accepted this substantial sum in stock in the corporation had he not been familiar with the business in which it was engaged, or authorized to engage, among which was to develop and operate any mines or minerals or *stone contained in the lands;* and the said corporation may at any time own or acquire possessions of and sell the ores, coal, *stone or anything else of value taken therefrom;* and further, to manufacture numerous things mentioned including *stone* and sell the products of *stone quarries.*

There is no extrinsic evidence tending to show that McQuire saw or read the articles of incorporation or had actual knowledge of the same before or at the time of the execution of the deed, yet since the law (Section 540, Kentucky Statutes) requires articles of incorporation to be recorded in the county clerk's office of the county in which the corporation's principal office or place of business is to be located and also in the office of the Secretary of State, the presumption is they were so recorded and McQuire had at least constructive notice thereof. But aside from constructive notice, as we have already stated, it does not require a stretch of imagination to conclude that McQuire was familiar with or had a general knowledge of the affairs of the corporation and the business in which it was engaged and authorized to engage. We do not mean to hold that the articles of incorporation amounted to direct and positive evidence of McQuire's knowledge of same, but it is a link in the chain of circumstances which may shed some light on the intention of the parties in the conveyances and purchase of the minerals and all rights conveyed in the deed.

The language used in the conveyance, viewed in the light of the circumstances surrounding the parties, impels us to the conclusion that the stone quarry in question was included in the conveyance as a mineral and title thereto or the right to quarry and remove stone therefrom passed to and vested in the corporation and in the chain of subsequent conveyances likewise passed to and vested in appellee.

Judgment affirmed.

Whole court sitting.