Virginia WEISSINGER et al., Appellants,

v.

P. Carroll MANNINI, Executor of the Will of Virgil Holder, Deceased, Appellee.

Court of Appeals of Kentucky.

March 7, 1958.

James F. Clay, Danville, for appellant.

Pierce Lively, Joe G. Davis, Danville, for appellee.

STANLEY, Commissioner.

Following the abandonment of a contest of the will of the late Virgil D. Holder, by leave of court the appellants herein filed an amended complaint alleging that the decedent had executed a certain will prior to that which had been probated, which was still in force and effect, and that the prior will, which devised certain real estate to the plaintiffs exclusively, had been executed pursuant to a contract between the testator and his deceased wife, Loretta M. Holder, through whom he had acquired the property. The court was asked to direct the probation of the prior will or, in the alternative, to declare there was a contract between the testator and his deceased wife that he would make a will, as he had done at first, and that "said contract be specifically enforced." The court ruled the sole issue to be tried was whether there was a contract and regarded the action to be for specific performance of such contract if there was one.

Ultimately, the court found the evidence did not establish the contract alleged, but went further and held that even if the evidence should be regarded as doing so, it was an oral agreement to devise real estate, hence, that specific performance was prohibited by the Statute of Frauds. KRS 371.010. Accordingly, the complaint was dismissed. The appeal follows.

Mr. and Mrs. Holder had no children. In February, 1938, they executed mutual wills in which they respectively left their estates to each other. Mrs. Holder died January 11, 1951. She was also survived by some nieces and nephews, among whom are the children of her deceased sister, Estelle Schafer, appellants herein, and Carol Ann Sanders, a daughter of her brother, P. C. Mannini. On January 17, 1951, which, as will be observed, was a week after his wife's death, Holder executed the first will, in which after reciting that, "In conformity with the wishes and desires of my beloved wife, from whom I inherited the real estate referred to in this paragraph, and in the belief that fairness requires that the title to said real estate upon my death revert to and vest in the sources whence it came," he devised Danville real estate to the five children of his wife's deceased sister, Estelle Schafer. He recited that he was leaving nothing to Carol Ann Sanders because "she is otherwise well provided for." But on January 31, 1951, Holder executed another will which is the same in all respects as the will which he had executed two weeks before, except that it includes Carol Ann Sanders among the devisees of the Danville real estate. Some unimportant clarifying changes were also made.

The evidence upon which the appellants primarily rest their case is that of Mrs. Isabelle Land, a daughter of Mrs. Holder's living sister. In substance and effect, that evidence is that on an occasion in September, 1950, when she was a visitor in the Holder home in Cincinnati, Mrs. Holder, in the course of a conversation, said that she had been trying to write her will and that she was not going to leave anything to Carol Ann because her parents would take care of her and that her sister Estelle's children "need it and I am going to leave it to them." Mrs. Holder said that she and her husband had made their wills and that "Virgil knows how I want it, want my property left, I will just let him do it." He responded, "Alright, Baduty, (as he called her) I will do it; I know how you want it. I will do it." Letters written by Mr. Holder after his wife's death contain some statements tending to show there was an understanding as recited by Mrs. Land.

The court empaneled an advisory jury. He told the jury that it was agreed that the parties had made mutual wills, as described above, and submitted two interrogatories. One was, in substance, whether the jury believed that on the occasion referred to by Mrs. Land "in consideration of Mrs. Holder not changing her will" executed in 1938 and making provision in a new will devising her property to the children of her deceased sister, Mrs. Schafer, he, Holder,

agreed with her that he would in his will give to them the property he had received from her. The jury answered, "No." The second question was whether the jury believed from the evidence that "it was understood and agreed by Mr. and Mrs. Holder" that she was "leaving to the judgment and discretion of Mr. Holder as to what disposition he would make of the property she left him at his death among her nephew and nieces, the children of Mrs. Schafer, and the daughter of P. Carroll Mannini." The jury answered, "Yes."

The court filed a statement that he had given some consideration and weight to the finding of the jury but made an "independent finding of fact" that (1) there was no valid contract between the parties that Mr. Holder would devise the property he received from his wife to the Schafer children to the exclusion of other relatives, including Carol Ann Sanders; (2) that the evidence did not indicate there was any such contract agreed upon; and (3) it was understood and agreed that Mrs. Holder was "leaving to the judgment and discretion of Mr. Holder as to what disposition he would make of the property left him at his death among her nieces and nephew, the children of Mrs. Schafer, and the daughter of P. Carroll Mannini." The conclusions of law and the judgment were as above stated.

The appellants argue that they were entitled to a judgment to the effect that Virgil Holder accepted his wife's estate subject to a constructive trust to dispose of it at his death in accordance with her directions, as he had done in his first will, so that whether there was or was not a parol enforcible contract is a question having no place in the case. All of the argument and the cases cited relate to constructive trusts or are cases holding under the peculiar circumstance it would be inequitable to allow the holder of title to property to retain it or make an unconscionable disposition through a breach of confidence. It does not seem necessary to discuss constructive trusts, for the appellants planted their case upon the allegation of an express contract.

It is a well settled rule that on appeal the parties must adhere to the cause of action pleaded or, in some cases, practiced below. The scope of review is limited to the theory or theories upon which the case was tried. Walters' Guardian v. Ransdell, 218 Ky. 267, 291 S.W. 399; Benefit Association of Railway Employees v. Secrest, 239 Ky. 400, 39 S.W.2d 682. We do not think it can be consistently argued that the evidence does not support the finding that there was no definite contract, as was alleged, or that the court did not apply the right law to such a case. However, we may observe as obiter that even had a constructive trust been relied upon, we would not regard the evidence sufficient to establish such a trust. See Taylor v. Fox's Executors, 162 Ky. 804, 173 S.W. 154; Panke v. Panke, Ky., 252 S.W.2d 909.

The judgment is affirmed.