**ELKHORN CITY LAND COMPANY, Inc.,**
**Appellant,**

v.

**ELKHORN CITY, a Municipal Corporation,**
**Appellee.**

Court of Appeals of Kentucky.

Oct. 9, 1970.

Rehearing Denied Dec. 18, 1970.

Jean L. Auxier, Pikeville, for appellant.

Clyde Mullins, Jack T. Page, Pikeville, for appellee.

RAYMOND C. STEPHENSON, Special Commissioner.

The parties herein are disputing the extent of the rights granted by the appellant land company to the appellee city in a deed of October 26, 1943, which contained the

following covenants pertinent to this dispute:

1. "The property herein conveyed is to be used for waterworks purposes only, and when abandoned as such is to revert to party of the first part herein, its successors or assigns."

2. "The coal, oil, gas and minerals and mineral substances with free right to mine, and market the same, are not conveyed in this deed."

Soon after the date of this deed the city constructed on the property a water intake and pumping station along the river near the east property line. A reservoir was constructed on the hill, generally in the central part of the subject tract. A municipal water system was operated with these basic facilities until the early 1950's. About 1953 or 1954 a water filter plant was constructed on the tract just west of the water intake.

On June 16, 1953, the city purchased additional property from the land company on which it constructed a new reservoir. The use of the old reservoir was closed about 1956, but the municipal water system has been operated up to the present time by means of a water intake, pumping station and filter plant located on the tract purchased by the original deed dated October 26, 1943, in conjunction with the reservoir located on the land purchased in 1953.

In 1967 the Department of Highways undertook to reconstruct part of Kentucky Highway 80, which involved construction just north of the property in question, and the Saltsman Construction Company, contractor on the project, needed fill material. The city then sold fill material to this construction company and, because the land company claimed the right to sell said material, an agreement was entered into providing that the sums payable by the contractor would be placed in escrow until the dispute between the city and the land company was resolved. The fill material was identified as "medium hard, dark gray sandy shale and sandy clay loam." The contract prohibited the construction company from removing earth or fill material from the premises lower than the elevation of the new roadway and bridge approach and required it after such removal to grade, level and seed the property.

The land company contends that the city has abandoned the use of the disputed tract of land for waterworks purposes. It is not disputed that the property in question has been used continuously as a source of water for the city since 1943. The trial court properly concluded that the city had not abandoned the granted tract for waterworks purposes. The essential elements of abandonment were not established by the land company's evidence. See Sandy River Co. v. Champion Bridge Co., 243 Ky. 424, 48 S.W.2d 1062 (1932). The intention to abandon must be shown by "clear, unequivocal and decisive evidence" in order for an abandonment to be established. Cameron v. Lebow, Ky., 366 S.W. 2d 164, 165 (1962). In view of the undisputed fact that the water intake, pumping station and filter plant were an integral part of the waterworks system for the city, the contention that the tract of land on which these facilities were located had been abandoned for waterworks purposes is without merit.

The land company further contends that the city's act of selling almost a hundred thousand cubic yards of land-fill material and causing it to be severed and removed from the property constituted an abandonment of the use of the property for waterworks purposes. The trial court properly found this contention to be without merit because the removal of the fill material from the hillside tract did not interfere with the existing use of the hillside property for water purposes. The operation of the waterworks facilities located thereon has been continuous and uninterrupted. The removal of the fill material resulted

in creating some level land at the north end of the tract without interference with the existing use of the property for water purposes. Cf. Williams v. McKenzie, 203 Ky. 376, 262 S.W. 598, 600 (1924).

█ The land company next contends that the city had no right to sell dirt and rock from the property even though the property was used for water purposes. It relies on the deed covenant that "The coal, oil, gas and minerals and mineral substances with free right to mine, and market the same, are not conveyed in this deed." Under the deed in question the city became the absolute owner of a defeasible fee simple title in the property conveyed, subject to be defeated only by one contingency and that was the cessation of the use of the property for waterworks purposes. Until the property ceases to be used for waterworks purposes the city is entitled to the full, complete and unrestricted use, enjoyment and occupancy of the premises.

In Kellogg v. Meadows, 309 Ky. 21, 215 S.W.2d 951, 952 (1948), it was said:

"A defeasible fee is descendable and assignable, and the owner, while his title continues, has the same right to the exclusive use and enjoyment of the land and complete dominion over it for all purposes as though he held it in fee simple."

See also Restatement of Property, §§ 49, 194.

The trial court rightly concluded that the city had the authority to sell the dirt and rock on the property and that such sale was not prejudicial to the land company's reversionary interest.

█ Finally the land company contends the city could not sell land-fill material from this property because the city's deed provided that "The coal, oil, gas and minerals and mineral substances with the free right to mine, and market the same, are not conveyed in this deed."

The land-fill material in question was sandy clay loam and sandy shale. This type of clay and shale is common and is generally covered with a thin surface of dirt, and it is not usually considered as a mineral or mineral substance. The same reasoning should apply to sandy clay loam and sandy shale as applies to limestone on the question of whether it should be considered as a mineral.

In Little v. Carter, Ky., 408 S.W.2d 207, 209 (1966), we said:

"It was pointed out in a Texas case, Atwood v. Rodman, Tex.Civ.App., 355 S.W.2d 206, that limestone is not legally cognizable as a mineral, because it is usually found in 'a natural surface situation that warrants its consideration as a part of the surface rather than as a part of the mineral estate.' In another Texas case, Heinatz v. Allen, 147 Tex. 512, 217 S.W.2d 994, it was held:

" 'In our opinion substances such as sand, gravel and limestone are not minerals within the ordinary and natural meaning of the word unless they are rare and exceptional in character or possess a peculiar property giving them special value, as for example sand that is valuable for making glass and limestone of such quality that it may profitably be manufactured into cement. Such substances, when they are useful only for building and road-making purposes, are not regarded as minerals in the ordinary and generally accepted meaning of the word.' "

We concur in the opinion of the trial court that said land-fill materials do not constitute minerals or mineral substances and that the appellant land company did not have any right, title and interest in and to said materials.

The judgment is affirmed.

All concur.