William FLORMAN; Frank Boyce Moodie, III, Kathleen Moodie; Berrian Minerals, Inc.; and Larry Glass, Appellants,

v.

MEBCO LIMITED PARTNERSHIP, A Kentucky Limited Partnership; Cumberland River Resources, LLC; Jim Smith Contracting, LLC; Lawrence L. Pedley; John C. Pedley; David Pedley; H. Gregory Maddux; Phillip Maddux; Hazel Maddux; Martha Lee Wright; and T.L. Maddux, Jr., Appellees.

MEBCO Limited Partnership, Appellant,

v.

William Florman; Frank Boyce Moodie, III; Kathleen Moodie; Berrian Minerals, Inc; Larry Glass; Lawrence L. Pedley; John C. Pedley; David Pedley; H. Gregory Maddux; Phillip Maddux; Hazel Maddux; Martha Lee Wright; and T.L. Maddux, Jr., Appellees.

Lawrence C. Pedley; John C. Pedley; and David Pedley, Appellants,

v.

William Florman; Frank Boyce Moodie, III; Kathleen Moodie; Berrian Minerals, Inc.; Larry Glass; MEBCO Limited Partnership, A Kentucky Limited Partnership; H. Gregory Maddux; Phillip Maddux; Hazel Maddux; Martha Lee Wright; T.L. Maddux, Jr.; Cumberland River Resources, LLC; and Jim Smith Contracting, LLC, Appellees.

Nos. 2004–CA–001908–MR, 2004–CA–002072–MR, 2004–CA–002074–MR.

Court of Appeals of Kentucky.

June 16, 2006.

Discretionary Review Denied by Supreme Court Dec. 13, 2006.

Case Ordered Published by Supreme Court Dec. 13, 2006.

594

Richard H. Peek, Jr., Smithland, KY, Bobby H. Richardson, Glasgow, KY, Ben J. Talbott, Jr., Louisville, KY, for appellants/appellees Florman and Moodie defendants.

Willard B. Paxton, Princeton, KY, for appellants Pedley Heirs.

Vance W. Cook, Princeton, KY, George E. Stigger, St. Mary, GA, for appellee MEBCO.

Kerry D. Smith, Paducah, KY, for appellees CRR and Jim Smith Contracting.

Before GUIDUGLI and JOHNSON, Judges; HUDDLESTON, Senior Judge.[1]

*OPINION*

JOHNSON, Judge.

William Florman, Frank Boyce Moodie, III, (*i.e.* Boyce Moodie), Kathleen Moodie, Berrian Minerals, Inc., and Larry Glass (collectively the "Moodie defendants"); MEBCO Limited Partnership, a Kentucky Limited Partnership (MEBCO); and Lawrence L. Pedley, John C. Pedley, David Pedley (collectively the "Pedley heirs") have appealed[2] separately from the orders

---

**1.** Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

**2.** MEBCO filed one notice of appeal; however, the notice of appeal was given two docket numbers, *i.e.,* 2004–CA–02072–MR and 2004–CA–02073–MR. The Pedley heirs filed one

entered by the Livingston Circuit Court on September 3, 2004, which adopted the recommendations of Special Commissioner Marvin Wilson submitted on August 5, 2004. The Moodie defendants have appealed that portion of the circuit court's order which awarded the clay on the land to MEBCO, the surface owner, and seek a determination that the ancillary language in the Shelby/Watkins deeds prohibits surface mining of the minerals and substances such as limestone and clay. MEBCO has appealed that portion of the circuit court's order which awarded the limestone on the land to the Moodie defendants as the mineral rights owner, arguing that Kentucky law provides that limestone is not a mineral. The Pedley heirs have appealed that portion of the circuit court's order which upheld the trust formerly set up in another civil action into which their portion of the royalties is placed. Having concluded under Kentucky law that limestone and clay are not minerals and thus were retained by the surface owners, we affirm in part and reverse in part. While the circuit court failed to make a determination as to whether the Moodie defendants were granted the right to surface mine the land, we also hold that they were not conveyed such rights. Having further concluded that the Pedley heirs failed to preserve

any of the issues raised in their appeal, we dismiss their claims without addressing them on the merits.

## HISTORY OF THE LAND

This case involves the ownership of "all the minerals on and under" 200 acres of land in Livingston County, Kentucky on the Cumberland River (the land). The land is a portion of a much larger tract of land owned by MEBCO,[3] whose principals are Firmon Cook, III and his wife, Betty Cook (collectively the "Cooks"). The Cooks acquired the land on April 25, 1991, and they later conveyed it to their company, MEBCO.

At the time the Cooks obtained title to the land, they received an interest in the surface only, not the minerals. The minerals had been previously severed from the surface estate in 1873, by two deeds.[4] On July 15, 1873, C.C. Shelby conveyed to Geo. W. Norton, Wm. F. Norton, John S. Long, F. Berrian Moody and J.C. Waller (the grantees) "all the minerals" in a portion of the land consisting of 185 acres (the Shelby Deed). Also on July 15, 1873, James Watkins conveyed to the grantees "all the minerals" in a portion of the land containing 12.41 acres (the Watkins Deed).[5] Those mineral rights were subsequently acquired by Salem Fluorspar Corporation (Salem Fluorspar) in 1942, which is now defunct.[6] The defendants claiming

notice of appeal; however, the notice of appeal was given two docket numbers, *i.e.*, 2004–CA–02074–MR and 2004–CA–02075–MR. In order to correct the appellate record, cases numbered 2004–CA–0273–MR and 2004–CA–2075–MR were ordered dismissed on March 1, 2005.

3. The land is a portion of the MEBCO property along the Cumberland River to the south, forming a backward "L" shape.

4. Boyce Moodie testified at trial that his grandfather, Francis Berrien Moodie, a resident of Louisville, had come to Livingston County in 1870 for the purpose of acquiring limestone and that he eventually acquired sole ownership of the minerals on and under the

land. Furthermore, because of the presence of high calcium carbonate limestone in Kentucky and across the Ohio River in Indiana, in 1870 the Louisville Cement Company built the largest cement plant in the world. Before the end of that century, the Louisville Cement Company and its competitors in Louisville and in Clark County immediately across the Ohio River, together "produced approximately 90% of the nation's cement."

5. These deeds will be referred to collectively as "the Shelby/Watkins deeds."

6. After the mineral rights were severed, no mineral development took place on, in, or under this land for the next 130 years. No limestone quarry was erected or operated

rights through Salem Fluorspar include the Moodie defendants [7] and the Pedley heirs.

In addition to a conveyance of the minerals, the Shelby/Watkins deeds contain certain surface-related rights that may be utilized by the mineral owner in the removal of such minerals. The ancillary rights set out in the Watkins deed are as follows:

Together with sufficient surface land on the bank of the river for ware rooms for storing away the minerals and mining material with right of way over said land to and from the mines with as much timber and surface land as may be necessary for buildings and cribbing of shafts for developing such minerals as may be sought for on and under said land [descriptions of the land omitted]. But it is clearly understood that the surface land on the bank of the river for ware rooms is not to exceed one acre to be in a square, and the right of way over said land not to exceed forty feet in width and to run direct from the mines to the nearest line of said survey [and] thence with said line to the ware house.

The ancillary rights in the Shelby deed are the same as the ancillary rights in the Watkins deed, except there was added to the last sentence quoted above "[and] not to interfere with the hill selected [sic] by me for a building site." [8]

## LEASES ON THE LAND

Jim Smith Contracting Company, LLC, and its wholly-owned company, Cumberland River Resources, LLC, (collectively CRR) [9] have been developing a limestone quarry on three adjacent properties in Livingston County.[10] In 1998 Rex Smith, a general partner of CRR, became interested in the possibility of acquiring a mineral lease on the land for the acquisition of the limestone, clay, and other substances.[11] Smith understood that the ownership of the limestone and clay located on the land was contested between MEBCO and the Moodie defendants; and therefore, in order to ensure that the limestone, clay, and aggregates were under lease regardless of who was determined to own the substances, CRR [12] obtained leases from both sides. On November 16, 1999, Smith, through his companies, entered into a mineral lease with Boyce Moodie (the Moodie lease),[13] and thereafter on December 21,

---

during the following century and three decades. Instead, the land was used for agricultural purposes by the surface owner.

7. Frank Boyce Moodie, III and his wife Kathleen Moodie, assigned rights to Berrian Minerals, Inc., and then to William Florman. Larry Glass then acquired part of Florman's rights.

8. In each of the deeds, I.T. Handlin, who had retained a vendor's lien in prior deeds, was also a party and he "release[d] his lien for purchase money on the minerals & rights of way & surface for ware rooms herein conveyed."

9. Smith assigned all of the interest in both the Moodie Lease and the Cook/MEBCO Lease to its own wholly-owned company, CRR. CRR is a successor to the LLC.

10. These properties include the S & P Ventures property and the Rudolph property, and border the land on the west and the north while the Cumberland River borders on the south. Since the land in question is wholly within property owned by MEBCO, the owners of the other properties are not parties to this case.

11. The total amount of property owned by MEBCO was 1,200 acres.

12. During Smith's testimony, all leases, assignments, and related documents were introduced into evidence. CRR has acquired a quarry permit.

13. On November 16, 1999, the Moodie defendants entered into an option lease and lease agreement with Jim Smith Contracting as lessee, granting Smith the right to prospect the premises with the option to lease for "market-

1999, he entered into a separate lease with the Cooks on the MEBCO property (Cook/MEBCO lease).[14] At trial the parties stipulated, without objection, as to the validity of CRR's leases with MEBCO and the Moodie defendants.

## PROCEDURAL HISTORY

It is undisputed that MEBCO owns the surface of the land set out in the Shelby/Watkins deeds. However, following the execution of the above-referenced leases, MEBCO filed the present action on May 30, 2002, as a Petition to Quiet Title and for Declaration of Rights regarding ownership of certain substances on the Shelby/Watkins tracts. In Count I of its petition, as amended, MEBCO sought to quiet its title to the limestone, clay, sand, and gravel in and underlying the two parcels of land in the Shelby/Watkins deeds.[15] MEBCO claimed that although it did not own the minerals on the land, it did own the limestone and clay as part of the surface estate. In Count II of its petition, MEBCO sought a declaration of rights of the mineral owners to surface mine the land of the Shelby/Watkins deeds in the recovery of minerals.

On July 25, 2002, in response to MEBCO's petition, the Moodie defendants filed their defenses and their own counterclaims and cross-claims, asserting that, as a consequence of the Shelby/Watkins deeds conveying their predecessor in title "all the minerals on and under" the property, they are the owners of the clay and limestone on the land in the Shelby/Watkins deeds. The Moodie defendants acknowledged that they had entered into a mineral lease with CRR.[16]

On August 6, 2002, the Pedley heirs filed their answer and counterclaim to MEBCO's petition, wherein they claimed that they had inherited some stock in Salem Fluorspar from Gracean M. Pedley. The Pedley heirs also expressly acknowledged that in 1998, "Moodie, d/b/a Berrian Minerals purchased an interest in the properties which had formerly been owned by [ ] Salem Fluorspar [ ], including the [land]". The Pedley heirs never filed a reply or answer to the cross-claims of the Moodie defendants or CRR in this action, and they never raised any issue in their own pleadings about the validity or amount of the Moodie defendants' interest in the minerals on the land. Despite the circuit court's

able limestone, sandstone, and other construction aggregates" on the Shelby/Watkins tracts. On January 9, 2001, the Moodie defendants assigned their interest in the lease to their company, Berrian Minerals, Inc. Then, on November 13, 2001, Berrian assigned its rights to receive income from the Smith lease to a third party, Florman. Moodie testified that under an assignment, Florman was granted the option to buy Moodie's rights. Consequently, Florman now claims all or part of the Moodie/Berrian rights purportedly derived from Salem Fluorspar. Florman then assigned a portion of his interest to Glass.

14. On December 21, 1999, the Cooks entered into an Option to Lease and Lease Agreement with Jim Smith Contracting granting Smith the right to prospect and explore the entire "L" shaped tract (including but not limited to that portion of the land as set out in the

Shelby/Watkins deeds) and the option to lease the premises of "marketable limestone, sandstone and other construction aggregates" on the premises. The Cooks conveyed their property to MEBCO at about the same time. Firmon Cook testified that Smith and CRR had the right to quarry the property.

15. It was stipulated at the trial that MEBCO is the owner of sand and gravel in and under the premises contained in the Shelby/Watkins deeds.

16. Thereafter, CRR moved to amend its pleadings to assert its cross-claims against the other defendants, including the claim that it had acquired certain valid mineral leasehold interests from the Moodie defendants under the November 16, 1999, lease agreement. On November 6, 2002, the motion was granted and the cross-claims of CRR were filed.

scheduling order, the Pedley heirs never filed a trial brief setting forth the "disputed facts and legal issues" of its case.

On February 24, 2003, MEBCO filed its motion for partial summary judgment arguing that the Shelby/Watkins deeds which conveyed "all the minerals on and under" the land did not convey the limestone and clay on the land. After extensive briefing on this matter by both MEBCO and the Moodie defendants, the circuit court, by orders dated December 15, 2003, and December 19, 2003, denied MEBCO's motion for summary judgment, and appointed Special Commissioner Wilson to try the case and to make recommended findings to resolve the factual issues regarding the questions of whether limestone and/or clay on the land were part of minerals owned by the Moodie defendants.

Hearings were held on May 17, 2004, through May 20, 2004, by Special Commissioner Wilson. The main issue in the case was whether the Shelby/Watkins deeds conveyed to the predecessors of the Moodie defendants the limestone and clay on such property, along with the rights to remove those substances, when the grantors conveyed to the grantees "all the minerals on and under" the property. Thus, the circuit court was required to determine whether or not the term "mineral" as used in the Shelby/Watkins deeds in 1873 included the substances of "limestone" and "clay". At trial, MEBCO, as surface owner, claimed it had full legal title to the limestone and clay, because such material belonged to the surface estate not the mineral estate; and MEBCO requested that the circuit court declare that the severance of the "minerals" through the Shelby/Watkins deeds did not include the right to remove the limestone or the clay. The Moodie defendants argued that the limestone and clay had such a peculiar value that both should be considered "minerals,"

and thus were not a part of the surface rights.

Upon request, the parties stipulated that the Pedley heirs owned five shares each, or a total of 15 shares, of Salem Fluorspar out of a total of 4,000 shares. Except for this stipulation, no other evidence of any kind was introduced regarding the issue of whether the Pedley heirs have any interests in the minerals. Further, the Pedley heirs made no opening statement, nor did they offer any witnesses to testify on their behalf.

CRR contended that regardless of whom the circuit court declared to be the owner of the limestone, clay, and related aggregates, such materials are subject to its leasehold interests under either, or both, the Cook/MEBCO Lease or the Moodie Lease. At the start of the trial, the attorney for the Pedley heirs, along with counsel for all other parties, expressly stipulated to the validity of the Cook/MEBCO and Moodie lease agreements with CRR.

Subsequently, the parties filed their proposed recommendations, including findings of fact and conclusions of law, to be considered by Special Commissioner Wilson. On August 12, 2004, Special Commissioner Wilson submitted his recommendations to the circuit court. Both MEBCO and the Moodie defendants filed exceptions to the recommendations on August 23, 2004. CRR also filed exceptions seeking an interpretation of certain lease provisions in its mineral leases and also tendered its proposed order adopting and modifying Special Commissioner Wilson's recommendations,[17] which the circuit court entered on September 3, 2004, as the judgment in this case.

The Pedley heirs did not tender their own pre-trial findings of fact or conclusions of law to suggest any questions of

---

17. MEBCO filed a response to CRR's exceptions and proposed order.

fact or law which they believed were at issue. However, on June 7, 2004, the Pedley heirs expressly adopted as their own the Moodie defendant's proposed recommendations, including a memorandum opinion, findings of fact, conclusions of law, and judgment, which specifically stated that the Moodie defendants now "own an undivided 90.9% of such minerals, and the remainder thereof 9.1% is held in trust by Raymond McGee, the Trustee appointed on March 7, 2001 by [the circuit court] for the unknown or missing owners." However, the Pedley heirs subsequently attempted to introduce new issues into this case, in an objection filed on June 14, 2004. The Moodie defendants moved to strike the Pedley heirs' objection, and the circuit court ruled in favor of the Moodie defendants, pursuant to the recommendation of Special Commissioner Wilson. The Pedley heirs never took exception to that recommendation, and on September 3, 2004, said recommendation became a part of the circuit court's final order and judgment of this case.

The circuit court held that the limestone was a "mineral" under the phrase "all the minerals on or under" the land as used in the Shelby/Watkins deeds, and that the "clay and limestone on the subject property possess unusually, unique and extraordinary qualities over and above 'ordinary' clay and limestone deposits, thereby imparting to them 'special value'." The circuit court stated that this conclusion was based upon expert testimony of several witnesses that the clay in this case could be used to make Portland cement and various ceramic products, and the limestone could be used to make Portland ce-

ment, roof shingles, agricultural lime, and various other products. However, in adopting Special Commissioner Wilson's recommendations, the circuit court further determined the clay could not be removed without destroying the surface and ruled the clay should remain a part of the surface estate.

In summary, the circuit court held that (1) the limestone was a mineral and a part of the mineral estate and thus belonged to the Moodie defendants; (2) the clay, while being a mineral, was still part of the surface estate because it could not be removed without destroying the surface and thus belonged to MEBCO; and (3) all limestone, clay, and other aggregates, regardless of ownership, were subject to the lease rights of CRR. These appeals followed.

There are three appeals in this case. The Moodie defendants present two issues in their appeal, (1) whether the limestone and clay on the land are owned by the surface owner or the mineral owner, and (2) whether the Shelby/Watkins deeds allow the mineral owner the right to surface mine the land in order to recover minerals. These same issues are also argued by MEBCO [18] in its appeal. The issues in the Pedley heirs' appeal do not overlap with these issues from a legal standpoint, and thus will be dealt with separately.

## DOES KENTUCKY LAW CLASSIFY LIMESTONE AND CLAY AS MINERALS?

Both MEBCO and the Moodie defendants raise before this Court the issue of whether, under Kentucky law, limestone and/or clay are minerals. The analysis as to whether either substance is a mineral is the same.[19] As stated previously, the cir-

---

**18.** In addition, MEBCO raised two other issues including, (1) whether the term "aggregates" in the Cook/MEBCO lease includes clay, and (2) whether payments under the Moodie lease triggers the "most favored nation" clause of the Cook/MEBCO lease.

These issues have been dismissed upon MEBCO's own motion and by order of this Court entered on May 9, 2006, and will not be discussed further in this appeal.

**19.** See Elkhorn City Land Co. v. Elkhorn City, 459 S.W.2d 762, 765 (Ky.1970).

cuit court, by adopting Special Commissioner Wilson's report, held that both limestone and clay were minerals because in this case they each have unique qualities and special value. However, the circuit court reasoned that because the clay could not be removed without destroying the surface, it remained a part of the surface estate. We hold that the circuit court failed to follow the current law of our Commonwealth and erred as a matter of law when classifying limestone and clay as minerals.

The interpretation of a deed is a matter of law, and thus our review of this case is de novo.[20] This rule applies equally to a deed involving mineral rights.[21] In interpreting a deed, we look to the intentions of the parties, "gathered from the four corners of the instrument" [citations omitted],[22] using its words' common meaning and understanding.[23] We will not substitute what was intended "for what was said" [citations omitted].[24] Further, a deed shall be construed based upon its provisions as a whole.[25] Since we agree with the circuit court's conclusion in this case that the terms of the Shelby/Watkins deeds granting the mineral rights were not ambiguous, we do not have to construe the terms of the deeds strongly against the

preparers, whether that be the grantor or the grantees.[26]

The Moodie defendants argue that the limestone and clay were part of the mineral estate which was severed based upon the broadness of the language in the Shelby/Watkins deeds conveying "all the minerals on and under." Further, they argue that the common ordinary meaning of the term "mineral," both in 1873 and today, includes the terms limestone and clay and, regardless, the circuit court found by expert testimony that the limestone and clay under and on the land has "unusual, unique and extraordinary qualities ... thereby imparting to them 'special value.'" Thus, the Moodie defendants argue that the limestone and clay also meet the legal definition of minerals because they are sought "for the purpose of profit."[27] However, we agree with MEBCO's argument that pursuant to the current law in Kentucky the clay and the limestone are not minerals.

In briefing this issue, both sides have cited various cases from several jurisdictions. However, the two cases in Kentucky that deal with whether limestone is a mineral are sufficient authority for our decision. We begin with *Rudd v. Hay-*

---

**20.** *Morganfield National Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky.1992).

**21.** *Yunker's Co–Exr's v. Mason*, 284 S.W.2d 98, 99 (Ky.1955).

**22.** *Phelps v. Sledd*, 479 S.W.2d 894, 896 (Ky. 1972).

**23.** *Franklin Fluorspar Co. v. Hosick*, 239 Ky. 454, 39 S.W.2d 665, 666 (1931) (stating that " 'words employed in a deed should be given their fair and reasonable meaning, receiving the interpretation accorded them by the common usage of mankind, having in view the circumstances of their use and the context.' ... The rule is also well settled that the deed will be construed most strongly against the grantor and in favor of the grantee if it admits of two constructions" [citations omitted] ).

**24.** *Phelps*, 479 S.W.2d at 896.

**25.** *Brown v. Harlow*, 305 Ky. 285, 286, 203 S.W.2d 60, 61 (1947).

**26.** *See Croley v. Round Mountain Coal Co.*, 374 S.W.2d 852, 854 (Ky.1964). *See also Gladys City Oil, Gas & Mfg. Co. v. Right of Way Oil Co.*, 137 S.W. 171, 178 (Tex.Civ.App. 1911) (noting that where a deed is prepared by the grantee, the rule is reversed and any ambiguity is construed most strongly against the grantee).

**27.** *Kalberer v. Grassham*, 282 Ky. 430, 138 S.W.2d 940, 942 (1940).

*den*,[28] which involved 125 acres of land located on the banks on the Cumberland River in Livingston County. The issue in *Rudd* was whether limestone was embraced in a 1900 deed that included the following language:

> "*All minerals, coal, clays, spars, oilgases and every other kind and character of mineral cement, oil, gases,* [ ] not included in the above general description, in on and under the after described land, together with the exclusive right to mine same and a right of way across said premises and ingress and egress over said land, for the purpose of operating any mine or mines and privilege of using water in their operation and in fact the full mining right and privilege in and to the following described land ... [emphasis added]." [29]

The *Rudd* Court determined, in construing the deeds, that the terms of the deeds in question plainly set forth the intent of the parties.[30] Further, the *Rudd* Court found that "[t]he authorities agree that the word 'minerals,' as used in a deed, does not ordinarily include limestone" [citations omitted].[31] *Rudd* quotes the Virginia case of *Beury v. Shelton*,[32] as follows:

> "It is a well-known fact, and known of course to the parties to the deed here involved, that the section where this deed was to operate was a limestone country, where the land is everywhere underlain with limestone, and where it crops out on practically every tract of

land that is not bottom land, and where it makes its appearance in manner varying from huge cliffs, as in the case here, to small outcroppings on various parts of the land. It is on the land everywhere, either breaking through it, or lying under it at different depths. In this country it is a part of the soil, and *a conveyance that reserves the limestone with the right to remove it would reserve practically everything and grant nothing*" [emphasis added].[33]

Even though the Court in *Rudd*, found that the limestone in question was "regarded as excellent Portland cement material[,]" the Court concluded that "the use of the term 'minerals,' without more, would *not show an intention to include limestone within the grant of the deed*, stating limestone is not within 'the ordinary and popular sense of the word' " [citation omitted].[34] The *Rudd* Court later noted that the term mineral cement was intended to cover limestone capable of use in the manufacture of cement,[35] otherwise the inclusion of limestone in this group would not have occurred.

Approximately 30 years later, the Court in *Little v. Carter*,[36] accepted the position set out in *Rudd* by stating "that under the plain language of *Rudd* ... the use of the term 'minerals,' without more, would not show an intention to include limestone within the reservation under consideration." [37] *Little* involved a reservation of a

---

28. 265 Ky. 495, 97 S.W.2d 35 (1936).

29. *Rudd,* 97 S.W.2d at 36.

30. *Id.* (stating that the question "of intention [is] to be decided upon the language of the grant or reservation," unless such language "is so ambiguous as to leave the mind in doubt as to its proper construction, in which event extrinsic evidence may be resorted to as an aid in determining the true meaning of the instrument").

31. *Id.*.

32. 151 Va. 28, 144 S.E. 629, 632 (1928).

33. *Rudd,* 97 S.W.2d at 36.

34. *Id.* at 36–37.

35. *Id.* at 37.

36. 408 S.W.2d 207 (Ky.1966).

37. *Id.* at 209.

specified interest in the "oil and gas, ... fire clay, and ... other minerals on the land conveyed."[38] The limestone surface owner leased the limestone for a royalty of $.05 per ton. The limestone lessee began quarrying the limestone and the mineral owner brought suit against the surface owner for his share of the royalties.[39] *Little* does not discuss the quality of the limestone or how the limestone was being utilized; however, in holding that limestone was not included in the mineral reservation, the *Little* Court quotes at length from *Rudd*, which quoted *Beury*. While there are no reported Kentucky cases where the Court had an occasion to consider whether a conveyance (as opposed to a reservation) of minerals does or does not include limestone, cases from other jurisdictions indicate that the decision would be the same.[40]

The Moodie defendants cite *Kalberer*, where our Supreme Court discussed the meaning of the term "minerals" as used in deeds. The Moodie defendants argue that although the holding of *Kalberer* specifically applied to sandstone, a surface mineral, the decision expressly states that the term "minerals" also includes clay, as well as every substance which can be obtained from the earth "for the purpose of profit."[41] We conclude that *Kalberer* is distinguishable from this case. First, *Kalberer* was a sandstone case that was decided between the rulings in the limestone cases

of *Rudd* and *Little*.[42] Second, *Little* rejected the stance of *Kalberer* when it ruled that limestone was not a mineral.[43] Further, Kentucky cases have held since the ruling in *Kalberer* that clay is not a mineral.[44]

While *Little* sets out a quote from the Texas case of *Heinatz v. Allen*,[45] regarding special value, the initial wording in *Heinatz* was dicta at the time it was written, stating that if limestone, sand, or gravel is "rare and exceptional" or has "special value", it may be considered as a mineral, otherwise such substances are not considered minerals "within the ordinary and natural meaning of the word."[46] However, the later Texas case of *Atwood v. Rodman*,[47] rejected this dicta in *Heinatz* and held that limestone was not a mineral or such a material as was contemplated by the term "other minerals" used in the instruments.[48] The Texas Court in *Atwood* stated as follows:

> To hold that usage controls would make for hopeless confusion, because if limestone is ... highly useful and valuable in building and construction, then there would be an inevitable conflict between those who claim that it is a mineral and want to use it for cement, and those who claim that it is rock used for construction.... For these reasons we do not think usage, which here is used to mean subsequent development to the dates of

---

38. *Little,* 408 S.W.2d at 208.

39. *Id.*

40. *See Wulf v. Shultz,* 211 Kan. 724, 508 P.2d 896, 900 (1973) (noting that a grant which included "other mineral substances" was held not to include limestone. The Court reasoned that such grant "should not be construed to include a substance which requires destruction of the surface estate for its removal").

41. *Kalberer,* 138 S.W.2d at 942.

42. *See Id.* at 941.

43. *Little,* 408 S.W.2d at 209.

44. *Cumberland Mineral Co. v. United States,* 206 Ct.Cl. 797, 513 F.2d 1399, 1401 (1975); *Elkhorn City,* 459 S.W.2d at 765.

45. 147 Tex. 512, 217 S.W.2d 994 (1949).

46. *Heinatz,* 217 S.W.2d at 997.

47. 355 S.W.2d 206 (Tex.Civ.App.1962).

48. *Atwood,* 355 S.W.2d at 214–16.

the instruments, can or does change the intent of the grantors and grantees.[49] The quote from *Heinatz* in *Little* was made with no discussion, and therefore serves as no more than dicta therein. Since Texas itself has disavowed the dicta in *Heinatz*, we do not find it to be persuasive in the case before us.

In *Cumberland*,[50] the Court addressed whether clay or sandstone were within a reservation of "the mineral, oil, and gas in, upon and under" certain lands in Pulaski, Whitley, and Laurel Counties, Kentucky.[51] The Court in *Cumberland* stated that "[n]either clay nor sandstone is a mineral . . . from the scientific standpoint." [52] While following Kentucky law, the *Cumberland* Court sought to distinguish *Kalberer*, rather than follow it,[53] and found that the reservation did not include clay because, otherwise "practically everything would be reserved and nothing granted" [citations omitted].[54] In *Elkhorn City*, the Court also found that clay was not a mineral when it held that sandy clay loam and sandy shale were not included in the reservation of minerals.[55]

■ After reviewing the cases in Kentucky and other jurisdictions, we hold that limestone and clay regardless of their value are not minerals. Thus, we reverse the circuit court on the issue that limestone is a mineral belonging to the mineral owner and affirm the circuit court's order to the extent that it held that the clay on the land belongs to the surface owner, but we are affirming for a different reason because we also hold that clay is not a mineral.

## SURFACE MINING ISSUE

The circuit court did not specifically determine whether the Moodie defendants were allowed to surface mine on the land, even though the issue was raised by both MEBCO and the Moodie defendants in their pleadings. MEBCO's position is that the ancillary rights in the Shelby/Watkins deeds clearly indicate that the mineral extraction process must take place underground, as such rights were limited to the following surface uses: (1) one acre, on the river, in the form of a square, for ware rooms for storing the minerals and mining materials; (2) right of way over such lands not to exceed 40 feet in width, the location of which is specified to run directly from the mines to the nearest line of the survey, thence with said line to the warehouse; and (3) such timber and surface as may be needed for buildings and cribbings[56] of shafts for developing such minerals. In addition, the Shelby deed provides that the right of way is not to interfere with the hill selected by Shelby for a building site.

The Moodie defendants argue, to the contrary, that surface mining should be allowed on the lands conveyed in the Shelby/Watkins deeds because there is no word in either deed which prohibits surface mining. The Moodie defendants further argue that not allowing surface mining is "totally at odds" with the grant of timber and surface land which was "for developing such minerals as may be sought for on and under said land," and that "it is simply unrealistic to believe that the parties necessarily intended that the minerals on the

---

49. *Id.* at 215. *See also Acker v. Guinn,* 464 S.W.2d 348, 351 (Tex.1971).

50. 513 F.2d at 1399.

51. *Cumberland,* 513 F.2d at 1400.

52. *Id.* at 1401.

53. *Cumberland,* 513 F.2d at 1403.

54. *Id.*

55. *Elkhorn City,* 459 S.W.2d at 765.

56. Cribbing is defined as "[a] framework support, as of timber lining a shaft." *Webster's II College Dictionary* (2001).

surface would only be removed by a process of underground mining."

■ In support of this argument, the Moodie defendants cite *Rudd*, where the Court held that the term "mine" was not restricted to underground mining, "but may include 'open cut,' 'strip,' or 'hydraulic' methods of mining." [57] In addition, the Court noted that because the deed conveyed the minerals "on" the property, as well as the minerals "in" and "under the property," the method of mining could not have been limited to underground mining.[58] The Moodie defendants also rely upon *Kalberer*, where the Court held that the deed provision that " 'the party of the second part agrees not to interfere with the farming interest of the parties of the first [part] in said land,' " [59] did not prevent the grantee from quarrying the sandstone which was held to be a mineral.[60]

■ MEBCO argues that there is no case law supporting language similar to that in the Shelby/Watkins deeds to include an implied right to quarry or to surface mine. The case law cited by the Moodie defendants in support of this claim is referring to broad form deeds, which do not apply in this action.[61] In the case of *Commerce Union Bank v. Kinkade*,[62] our Supreme Court held that the language of three non-broad form deeds, *i.e.*, "right to such surface space as may be necessary in mining operations," [63] was not sufficient to show a grant to strip mine the property.[64] The Supreme Court held that "[t]he language of the conveyances ... is such that it must be readily realized that there was no grant of rights necessary for removing the coal by the open-pit or strip method...." [65] The Supreme Court went on to state as follows:

> [T]here must be *a definite enlargement of specified mining rights* in the instrument creating those rights before an owner may conduct mining operations contrary to the rights usually implied in a mineral grant [emphasis added].[66]

---

57. *Rudd*, 97 S.W.2d at 37.

58. *Id.*

59. *Kalberer*, 138 S.W.2d at 941.

60. *Id.* at 944. The Moodie defendants also argue that Kentucky law holds that the surface estate is subservient to the mineral estate. The Moodie defendants cite KRS 381.430, which states that when the mineral interest has been severed from the surface estate, the possession of the surface estate "shall be deemed to be for the benefit of the person, his heirs and assigns, to whom the mineral, interests or rights have passed." MEBCO argues that the Moodie defendants' argument regarding dominant versus subservient estates has no application to this issue, but rather the statutory reference cited by the Moodie defendants applies to adverse possession and has nothing to do with dominant or subservient estates. We agree.

61. In non-broad form deeds, the rights of the surface owners are not necessarily subordinate to the mineral owner. Broad form deeds were deeds used in the past 30 years that were held by our courts to grant the right

to strip mine without compensation to the surface owner. Later, these broad form deeds were for a limited period of time held to include the right to strip mine upon payment to the surface owner. Finally, our Supreme Court ruled that the broad form deeds were unconditionally not to include the right to strip mine without the consent of the surface owner. *See Ward v. Harding*, 860 S.W.2d 280, 287 (Ky.1993) (stating that "[a]s this Court's decision in *Buchanan v. Watson* [290 S.W.2d 40 (Ky.1956)] presumed a right to surface mine merely by virtue of the ownership of mineral rights, by this decision we hold that no such presumption shall hereafter exist").

62. 540 S.W.2d 861 (Ky.1976).

63. *Id.* at 862.

64. *Id.* at 864.

65. *Id.*.

66. *Commerce Bank*, 540 S.W.2d at 863. *See also Peabody Coal Co. v. Erwin*, 453 F.2d 398, 399 (6th Cir.1971) (noting that the non-broad

Then in 1997, this Court spoke directly to strip mining methods. In *Karst–Robbins Coal Co., Inc. v. Arch of Kentucky, Inc.*,[67] this Court held the following:

> Hence, the owner of a mineral estate thereafter [the *Ward* decision] could not use strip mining methods to extract minerals without the surface owner's consent, unless there was clear and convincing evidence that regardless of when the original severance deed was executed, the parties thereto intended to permit recovery of the minerals by such strip mining methods.[68]

Based on this current law, MEBCO argues that there was no clear and convincing evidence presented that the parties to the Shelby/Watkins deeds intended to permit recovery of minerals by surface or strip mining methods, as is stated in pages nine and ten of Special Commissioner Wilson's report. MEBCO goes on to argue that because the Shelby/Watkins deeds do not expressly grant the right to surface or strip mine the minerals, any right to such use of the premises would have to be implied.

> In the absence of an authorization contained in the grant or reservation, the mineral owner may not destroy the surface of the land by strip mining.
>
> In some circumstances, the deed grants the mineral owner the right to

surface mine.... [S]uch a right is not to be lightly or casually implied [footnotes omitted].[69]

This is the current law of Kentucky which is in line with common law.[70] Therefore, we agree that without extrinsic evidence indicating such approval, the Moodie defendants do not have the right to surface mine for minerals.

## ISSUES RAISED BY THE PEDLEY HEIRS

■ The Pedley heirs argue that the circuit court erred in "impress[ing]" a trust on their interest income from Salem Fluorspar. This argument is based on the 2001 case filed by Berrian Minerals in which the Pedley heirs claimed they were not properly served, but the circuit court entered a decree imposing a trust and named a trustee for the unknown or missing shareholders of Salem Fluorspar. They further argue that Salem Fluorspar was never administratively dissolved, but rather expired by the terms of its charter in 1967 and that Boyce Moodie, as a director and officer of the company, breached his fiduciary duty to the Pedley heirs in failing to settle the affairs of the corporation.[71]

Prior to trial, discovery was taken in this case. In Boyce Moodie's deposition, he testified regarding his January 12, 2001, lawsuit[72] which he had filed pursuant to

---

form deed included all the rights proper and necessary for the mining of coal and the court held that such language "does not indicate the intention of the parties that the mineral owner bought the right to destroy the surface").

**67.** 964 S.W.2d 419 (Ky.App.1997).

**68.** *Id.* at 424.

**69.** 58 CJS *Mines and Minerals* § 182 (Supp. 2005).

**70.** *See* 58 CJS *Mines and Minerals* § 167 (Supp.2005).

**71.** The Pedley heirs argue that KRS 271.580 controlled the dissolution of Salem Fluorspar, and that the mineral estate should have been sold and the proceeds distributed to the shareholders in 1967.

**72.** On January 22, 2001, the case of *Berrian Minerals, Inc. v. Grace M. Brown*, Case No. 01–CI–00007, was filed in the Livingston Circuit Court, in which the Moodie defendants sought the declaration of a trust concerning the heirs so that a mineral lease could be developed. The last order in that case, dated May 6, 2001, appointed Raymond McGee as trustee for the minority 9% interest for unknown and missing owners of mineral rights. This trusteeship included the Pedley heirs and

KRS 353.460, and the petition and court decree of the 2001 case were furnished to the parties. Contrary to the unsupported statements that the Pedley heirs were not served with summons or process, the records clearly show that they were constructively served pursuant to the statutes and Kentucky Rules of Civil Procedure. In any event, no pleadings were ever filed with respect to said question on behalf of the Pedley heirs, and no evidence disputing or contesting the validity of the decree was ever presented by the Pedley heirs at trial.

While the Pedley heirs acknowledge that the question as to the amount of stock that the Moodie defendants own is not ripe for review and that they cannot prove that they own more than 15 shares in the corporation, they argue that the circuit court erred in finding that the Moodie defendants owned 90.9% of the minerals under the Shelby/Watkins deeds and that the other 9.1% should be held in trust for the beneficial owners. They further argue that because the Moodie defendants do not wholly own the mineral rights they had no right to enter into the lease with CRR and, thus, the Pedley heirs are not bound by the decree establishing the trust. The Pedley heirs have asked this Court to reverse the circuit court's ruling and to send this case back for a determination as to what stock the Pedley heirs and other

shareholders of Salem Fluorspar, Inc. are entitled.

However, we must conclude that the Pedley heirs have failed to comply with the Kentucky Rules of Civil Procedure in preserving these issues on appeal. First, in violation of CR 76.03(8), they did not set forth any of these issues in their pre-hearing statement, and thus, have not substantially complied with the rule.[73] The only issue stated in their pre-hearing statement was that "[t]he circuit court was in error when it held that [the Pedley heirs] were bound by a judgment in a prior action to which they were not parties."

The Pedley heirs raise several issues which are different from the vague presentation in their pre-hearing statement, including that Boyce Moodie had breached his fiduciary duty to the Pedley heirs. In conflict with CR 13.01,[74] this issue was not pled as a cross-claim or other claim, nor was it tried before Special Commissioner Wilson at the trial of this matter on May 17, 2004. Two other issues omitted from the Pedley heirs' pre-hearing statement were actually stipulated to by all parties at trial, including the amount of stock owned by the Pedley heirs and the validity of the lease between the Moodie defendants and CRR.[75] Not only were both of these issues stipulated to by the Pedley heirs, they did nothing to preserve the issues at trial.

the Maddox heirs. At the trial in this case, Boyce Moodie testified that Salem Fluorspar's interest had descended to its shareholders and that Moodie obtained 90.9% of the outstanding shares; therefore, Moodie filed an action in the Livingston Circuit Court concerning the other 9.1% of the shares to get authority to enter into a lease, shown by the petition and decree in that lawsuit.

**73.** *See Capital Holding Corp. v. Bailey*, 873 S.W.2d 187, 197 (Ky.1994).

**74.** CR 13.01 states in relevant part that "[a] pleading shall state as a counterclaim any

claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...."

**75.** The Pedley heirs argue to this Court that they stipulated to the existence, not the validity, of the lease between the Moodie defendants and CRR. However, from our review of the trial record, it appears that the validity of this lease was never contested after the stipulation was entered and, at oral arguments before this Court, the Pedley heirs' attorney stated that such was not contested.

The Pedley heirs also violated CR 76.12(4)(c)(iv) and CR 76.12(4)(c)(v) which state as follows:

(iv) A "STATEMENT OF THE CASE" consisting of a chronological summary of the facts and procedural events necessary to an understanding of the issues presented by appeal, with ample references to the specific pages of the record, or tape and digital counter number in the case of untranscribed tape-recordings, supporting each of the statements narrated in the summary.

(v) An "ARGUMENT" conforming to the Statement of Points and Authorities, with ample supportive references to the record and citations of authority pertinent to each issue of law and which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.

There is no citing reference to the evidence in the record or to where the issues were preserved in the circuit court for our review.[76]

 Further, CR 8.01 [77] requires that claims to be litigated be plainly stated. "The scope of review is limited to the theory or theories upon which the case was tried." [78] "The Court of Appeals is one of review and is not to be approached as a second opportunity to be heard as a trial court. An issue not timely raised before the circuit court cannot be considered as a new argument before this Court." [79] Based on all the foregoing, we hold that the Pedley heirs failed to adequately preserve any of the issues in their appeal to this Court and, thus, we will not address the merits of the issues raised.

For the foregoing reasons, the orders of the Livingston Circuit Court are affirmed in part and reversed in part, and this matter is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.

---

**76.** *See Elwell v. Stone*, 799 S.W.2d 46, 47–48 (Ky.App.1990).

**77.** CR 8.01(1) states that "[a] pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (a) a short and plain statement of the claim showing that the pleader is entitled to relief and (b) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded."

**78.** *Weissinger v. Mannini*, 311 S.W.2d 199, 201 (Ky.1958).

**79.** *Lawrence v. Risen*, 598 S.W.2d 474, 476 (Ky.App.1980).