The **VILLAS AT WOODSON BEND CONDOMINIUM ASSOCIATION, INC.; Robert Lucas; Reed Hall; Vicki Cooper; Ron Miller; Geraldine Mize; Melinda Washburn and Hugh Whitaker, Appellants**

v.

**SOUTH FORK DEVELOPMENT, INC. and Citizens National Bank, Appellees.**

No. 2010–CA–000578–MR.

Court of Appeals of Kentucky.

Dec. 7, 2012.

Michael M. Hirn, Michael C. Merrick, Louisville, KY, for Appellant.

Richard G. Meyer, Crestview Hills, KY, for Appellee.

Before LAMBERT, NICKELL, and VANMETER, Judges.

## OPINION

NICKELL, Judge:

The Villas at Woodson Bend Condominium Association, Inc. ("The Association"), and several of its members have appealed from the Pulaski Circuit Court's November 12, 2009, order rescinding its prior grant of partial summary judgment in their favor and instead granting partial summary judgment in favor of South Fork Development, Inc. ("South Fork"). Following a careful review of the record, we affirm.

In March 2001, South Fork purchased an approximately 160 acre parcel of land located on Lake Cumberland in Pulaski County, Kentucky. South Fork then began developing a condominium plan known as The Villas at Woodson Bend. On April 21, 2002, South Fork filed a Master Deed establishing the condominium regime pursuant to Kentucky's Horizontal Property Law.[1] Approximately forty-eight acres of the parcel were to be utilized in the construction of the condominium project, an additional twenty acres was dedicated for a sewer treatment facility, and the remaining acreage was retained by South Fork for uses other than the condominium project. At the time of the filing of this appeal, 61 condominium units had been constructed, along with a clubhouse, swimming pool and boat dock to service the development's residents. All but three of the condominiums were sold between July 2002 and November 2008.

Unfortunate difficulties and disputes arose between South Fork and the Association culminating in the filing of the instant suit in May of 2008 by the Association and several representative members. Among numerous other claims not pertinent to this appeal, the Association sought to enjoin South Fork from undertaking any future development within the condominium project without the majority consent of the existing unit owners. The Association claimed the express language of the Master Deed required South Fork to

---

1. Kentucky Revised Statutes (KRS) 381.805 *et* *seq.*

complete all construction and development activities at the condominium project within a period of four years from the date the Master Deed was recorded. It further claimed that at the conclusion of that time, South Fork was required to turn over control and responsibility for the condominium property to the Association and take no further unilateral action with respect to the development.

In response, South Fork asserted that the language of the Master Deed did not set a time limitation on the construction phase of the development. Rather, the language placed restrictions on the total number of units and the aggregate square footage of the units which could be constructed within the project boundaries. It further alleged it had reserved unto itself the right to amend the Master Deed at any time to increase the number of units subject to the regime on an "as-built" basis up to the maximum set forth in the original Master Deed, and *no consent from the unit owners was necessary* to make such amendments.

On February 19, 2009, the trial court granted partial summary judgment in favor of the Association. It found "[t]he language of the master deed is clear that [South Fork's] ability to amend or modify the master deed without the approval of more than 50% of the interest in the common elements is limited to the four year period or the marketing interval." *Because that period ended in April of 2006*, the trial court ruled as a matter of law that

South Fork could construct only such units as had been designated in the Master Deed or any amendments thereto filed prior to the expiration of the four year time limitation. Any further construction activities must be approved by a vote of greater than a fifty percent ownership interest in the common elements. The trial court specifically disagreed with South Fork's assertion that it had retained the right to unilaterally amend the Master Deed to add additional units to the regime.

Upon obtaining new counsel, South Fork subsequently moved to vacate the February 19, 2009, order. In an accompanying legal memorandum supportive of its request for relief, South Fork argued the trial court had been misinformed by its former counsel regarding the source of the language of the Master Deed, and insisted the language in the document had been copied verbatim from a publication known as Kentucky Forms and Transactions, authored by two well-respected real estate attorneys. South Fork further alleged the trial court had erred in its interpretation of the Master Deed and had relied on improper sections thereof in reaching its conclusion. For the first time, South Fork agreed it did not have the power to unilaterally amend the Master Deed, but argued that Article XIII of the Master Deed, entitled "Future Development," contained a "consent to amendment" provision expressly imposed on each purchaser upon their acceptance of a deed of conveyance to one of the condominium units.[2] Thus, South Fork argued any amendments to

---

**2.** In pertinent part, Article XIII states:

Villas at Woodson Bend (Condominiums) as built consists of four (4) units in the buildings previously constructed, and may *consist of additional units contained in additional buildings which may be constructed.* These buildings and the units therein together with the common elements appurtenant thereto will automatically become subject to this condominium regime by

amendment(s) to the master deed upon filing of their respective floor plans. Declarant specifically reserves the right, from time to time, to further amend the master deed to the extent of adding additional units and general common elements (not to exceed two hundred (200) units containing four hundred seventy-five thousand (475,000) square feet in the aggregate) and limited common elements and, once added by

the Master Deed purporting to increase the number of units subject to the regime was accomplished with the consent of all of the unit owners of record.

Contrary to the Association's position, South Fork alleged Article XIII stood "independent, free and clear of Articles XIV and VI(F)"[3] and was the only section of

amendment, the units therein shall have the same rights, privileges, and obligations as appear herein. In furtherance of the foregoing, an irrevocable power coupled with an interest is hereby granted and reserved unto declarant, its successors and assigns (however, individual unit owners shall not be included within the meaning of successors and assigns as used in this paragraph), to SHIFT AND REALLOCATE from time to time the percentage of ownership in the common elements appurtenant to each unit to the percentages set forth in each amendment pursuant to this paragraph. Each execution of a deed of conveyance, mortgage, or other instrument with respect to a unit, and the acceptance thereof, shall be deemed a grant, and an acknowledgment of and conclusive evidence of the parties thereto to the consent of such reservation of power to declarant as attorney in fact and shall be deemed to reserve to declarant and its successors and assigns the power to shift and reallocate from time to time the percentages of ownership in the common elements appurtenant to each unit set forth in each such recorded amendment. Further, declarant specifically reserves unto itself, and its successors and assigns, the rights to determine the location of all future units, common elements, and limited common elements; it being provided, however, that all future development of the condominium project shall be restricted to the property and the condominium project shall not be expanded to include any other property. Each unit owner by acceptance of a deed to a unit further acknowledges, consents, and agrees to this master deed and to each such amendment that is recorded, as follows:
\* \* \* \*
(H) Each unit owner by acceptance of the deed conveying his unit agrees for himself and all those claiming under him, including mortgagees, that the master deed and each amendment is and shall be deemed to be in accordance with the Horizontal Property Law and, for purposes of the master deed and the Horizontal Property Law, any changes in the respective percentages of ownership in the common elements as set

forth in each such amendment shall be deemed to be made by agreement of all unit owners and mortgagees.
(I) Declarant reserves the unilateral right to amend the master deed for the purpose of shifting and reallocating the percentages of ownership in the common elements in the manner provided by this article and any applicable law. . . .
\* \* \* \*
No future board acting for and on behalf of the council shall amend the master deed or adopt or amend any bylaws which would hinder, obstruct, or jeopardize declarant's interest in the present or future development of the condominium project.

3. Article XIV, captioned "Amendment to Declaration," sets forth the mechanism required to amend the Master Deed. It states in pertinent part:

This master deed may be modified, altered, amended or added to by declarant pursuant to an instrument recorded by declarant in the office of the county clerk of Pulaski County, Kentucky, subject to and in accordance with section VI(F), or by an instrument signed by each unit owner of record (and by declarant, if the consent of declarant to such amendment is required under the terms of the condominium documents), or by a vote of greater than 50% in interest in the common elements at any duly called meeting of unit owners. . . .

Article VI discusses the role of the council of co-owners. Subsection (F) discusses situations in which the declarant's written consent is necessary.

Anything to the contrary contained in any of the condominium documents notwithstanding, during the interval (the "declarant's marketing interval") from the date of recordation of this master deed until the earlier of such time as (1) declarant or its designee(s) shall cease to own any units in the condominium project, or (2) four years from the date of recording this master deed, the board of directors may not, without the declarant's prior written consent (1) amend any of the condominium documents; (2)

the Master Deed which addressed future development within the project. As an alternative request for relief, South Fork sought to have the trial court designate its February 19, 2009, order as final and appealable. The Association responded and urged the trial court to uphold its earlier ruling.

On May 12, 2009, the trial court denied South Fork's motion to vacate but agreed to designate the February 19, 2009, order as final and appealable. Due to a clerical mistake, the order was improperly designated as an "Agreed Order." Further compounding the confusion, the clerk distributed the order to South Fork's former counsel who did not forward same to South Fork's new counsel. Before counsel was made aware of the May 12, 2009, order, South Fork moved for summary judgment on the same counts which were subject to the February 19 and May 12 orders. Upon learning of the entry of the May 12, 2009, order, South Fork moved to vacate the order and allow its motion for summary judgment to proceed. The trial court agreed to rescind the May 12, 2009, order and allow the Association time to respond to the summary judgment motion after which the matter would stand under submission.

On November 12, 2009, the trial court entered a seven-page order granting partial summary judgment to South Fork. The trial court found its earlier rulings were correct—that South Fork could not unilaterally amend the Master Deed beyond the marketing interval. However, it went on to find that when the Master Deed was amended to allow for future development, Article XIII controlled and any such amendment was made with the consent of the unit owners, not unilaterally by South Fork. Thus, as a matter of law, the Master Deed could be amended to include up to a maximum of 200 units or 475,000 square feet, and South Fork was not restricted from constructing such units outside the four-year marketing interval. On March 5, 2010, the trial court designated the November 12, 2009, order as final and appealable. The Association timely appealed.

The sole issue to be resolved in this appeal is the proper interpretation of the Master Deed—specifically Articles VI(F), XIII, and XIV—to determine whether South Fork maintained the ability to undertake additional construction within the

make any addition, alteration, or improvements to the common elements or to any unit; (3) assess any common charges for the creation of, addition to, or replacement of all or part of a reserve, contingency, or surplus fund if the effect of such assessment would be to increase the amount of such reserve, contingency, or surplus fund in excess of an amount equal to that proportion of the then existing budget which the amount of reserves in the initial budget of estimated expenses for the condominium project bears to the total amount of such initial budget of estimated expenses; (4) hire any employee in addition to the employees, if any, provided for in the initial budget; (5) enter into any service or maintenance contract for work not covered by contracts in existence on the date of the first closing of title to a unit; (6) borrow money on behalf of the condominium project; or (7) reduce the quantity or quality of services to or maintenance of the condominium project. During the declarant's marketing interval, in addition, declarant may unilaterally amend any condominium document so long as such amendment does not (1) alter the undivided interest in the common elements appurtenant to any unit not owned by declarant or its nominee at the time of such amendment, (2) increase the share of common expenses which are the obligation of unit owners other than declarant at the time of such amendment, or (3) materially alter the responsibilities and obligations of declarant as developer of the condominium project to other unit owners under the condominium documents.

condominium project or if its rights to do so ended upon expiration of the marketing interval. The Association contends the Master Deed contains internal inconsistencies regarding future development which should be resolved against South Fork as the drafter of the document. When so construed, the Association believes it was entitled to summary judgment and the trial court erred in failing to grant same in its favor. The Association argues the trial court's error was further compounded by its reliance on Article XIII as controlling in granting summary judgment in favor of South Fork permitting future development. We disagree and affirm.

The well-settled standard of review of a trial court's grant of summary judgment is whether the trial court correctly found there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991). Here, the trial court's factual findings are not in issue and the soundness of the grant of summary judgment is based purely on a matter of law—that being the proper construction of a deed, *see Phelps v. Sledd*, 479 S.W.2d 894, 896 (1972). Thus, our review is *de novo*. *Florman v. MEBCO Ltd. Partnership*, 207 S.W.3d 593, 600 (Ky. App.2006) (citing *Morganfield National Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky.1992)).

In determining the proper interpretation of a deed, we look to the intentions of the parties which we deduce from the four corners of the instrument. *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky.2000); *Phelps v. Sledd*, 479 S.W.2d 894, 896 (Ky.1972). "It is to be assumed that the parties to a deed intended each of its provisions to have some effect from the very fact that the words were used. The rule is well settled that words in a deed

that are not technical must be construed as having their ordinary connotation." *Id.* We are required to use the common meaning and understanding of the words utilized in a deed and will not infer or substitute intent for what was actually said. *Id.* "Further, a deed shall be construed based upon its provisions as a whole." *Florman*, 207 S.W.3d at 600 (citing *Brown v. Harlow*, 305 Ky. 285, 286, 203 S.W.2d 60, 61 (1947)). We concur with the trial court's conclusion that the terms of the Master Deed were not ambiguous. Thus, we are not constrained to construe the terms of the Master Deed strongly against South Fork as preparer of the instrument. *McIntire v. Marian Coal Co.*, 190 Ky. 342, 227 S.W. 298, 299 (1921) ("The rule is that a deed which grants land and certain specified rights and privileges, there being no ambiguity in the instrument, will be construed according to its terms, and enforced strictly according to its terms. But, where there is ambiguity or uncertainty in the deed, it will be construed most strongly against the grantor and in favor of the grantee.").

The arguments on appeal essentially parrot arguments the parties made in the trial court. The Association contends Articles VI(F) and XIV limit South Fork's ability to unilaterally amend the Master Deed to the four-year marketing interval which, undisputedly, ended in mid–2006. It alleges the provisions of Article XIII are directly contrary to the time limitations and the Association's rights to control the common elements contained in Articles VI and XIV. South Fork asserts it obtained unanimous consent from the unit owners to conduct additional development activities and to shift and reallocate owner percentages of ownership in the common elements by virtue of the express language contained in Article XIII and any amendments to the Master Deed were

done pursuant to that unanimous consent. The trial court agreed with South Fork that Article XIII controlled and was dispositive of the issue of future development and we concur.

Article VI(F) contains a number of restrictions on the actions of the Association during the four-year marketing interval. It further contains restrictions on the ability of South Fork to unilaterally amend the condominium documents. These restrictions are undisputed. However, contrary to the Association's arguments, and as the trial court correctly found, this section does not displace the contents of Articles XIII and XIV relating to the amendment of the condominium documents, including the Master Deed. To construct the language of Article VI(F) in the manner urged by the Association would not give meaning to the words used in each section and would operate to make some of the provisions of the Master Deed—most especially Article XIII—meaningless.

■ Article XIII contains specific provisions relating to future development of the condominium regime and is consistent with other provisions of the Master Deed relating to amendment to shift and reallocate the interest of unit owners in the common elements to reflect the "as-built" nature of an ongoing development. Article II(A) indicates there shall be a maximum of 200 units constructed and subject to the condominium regime. That article further authorizes South Fork, "without any requirement to obtain the consent of any unit owner or other person," to amend the Master Deed upon completion of the construction of all units to ensure the percentage interest of each unit owner in the

common elements conforms "to the area in square feet and percentage interest of those units as built." Article III specifies each unit shall have a fixed interest in the common elements based upon the square footage of the individual unit as a percentage of the square footage covered by the entire condominium regime. That article goes on to state that such percentage interest in the common elements "shall remain constant" and adjustments of such percentages are prohibited without prior written approval of all unit owners "*except as provided in section III(A), and article XIII of this master deed....*" (emphasis added). As the trial court expressly found, Article XIII contains clear and specific language concerning the consent of the owners to future development [4] and the shifting and reallocation of their interests in the common elements garnered through acceptance of their respective deeds. Based upon this language—as the trial court again correctly concluded—any amendments to the Master Deed for the limited purpose of bringing additional units into the condominium regime and altering the interests in the common elements as a necessary consequence of future development, are done with the unanimous consent of the unit owners and not unilaterally as the Association urges.

■ The Association's claim that such verbiage is ineffective as many purchasers would not and did not read the Master Deed prior to executing the deeds conferring their particular units is without merit. It is abundantly clear that a party is bound by his agreement with the terms of a contract he has signed and had an opportunity to review, and ignorance of the

---

4. We also note that Article XIII contains express language that the Association is prohibited from taking any action "which would hinder, obstruct, or jeopardize the declarant's interest in the present or future development of the condominium project." We are unable to ascertain how the Association squares its current position of opposition to future development with this restriction.

terms thereof is not a defense to the rights and obligations set forth therein. *See Prewitt v. Estate Building & Loan Ass'n,* 288 Ky. 331, 156 S.W.2d 173, 174 (1941) (general principle is that a person given opportunity to read contract he signs is bound by it, unless there was fraud in obtaining his signature).[5]

We cannot determine from the language of the Master Deed, in the cited provisions or otherwise, where the time restriction on additional development urged by the Association is located or supported. No such express restrictive language appears anywhere in the document. Article XIII specifically reserves to South Fork, its successors and assigns, with the consent of all record unit owners, the right to amend the Master Deed for purposes of shifting and reallocating interests in and to the common elements as future development occurs. There is absolutely no indication that South Fork, in drafting the Master Deed and other condominium documents, intended to (or inferred it would) complete all construction activities within a four-year time period. It did, however, impose a definite restriction on the acreage, number of units and total square footage of buildings which could be included in the development. Although South Fork could have amended the Master Deed during the marketing interval to increase these numbers, it did not, and any future attempt to do so would be improper and ineffective. Thus, contrary to the Association's concerns, while reserving the right to continue construction beyond the four-year marketing interval, South Fork did not retain the right to conduct unlimited future development as the Master Deed clearly placed finite limits on the scope of the condominium project. The Association wrongly focuses on time when the critical factor is the Master Deed's limitation on the maximum number of units and total square footage available for possible development within the regime. The trial court correctly concluded that South Fork retained the right to pursue future development activities beyond the four-year marketing interval.

For the foregoing reasons, the judgment of the Pulaski Circuit Court is affirmed.

ALL CONCUR.

5. Although the Association makes a minor attempt to allege fraud on the part of South Fork based on marketing brochures for the development, their argument rings hollow. Moreover, were we inclined to address the issue, the Association lacks standing to assert such a claim because all of the deeds were between individual unit purchasers and South Fork; the Association was not a signatory to any of the deeds. Standing requires that a party "have a judicially recognizable interest in the subject matter of the suit." *HealthAmerica Corp. of Kentucky v. Humana Health Plan, Inc.,* 697 S.W.2d 946, 947 (Ky.1985). The Association is a legal stranger to the deeds and cannot be said to have any legal interest in a claim of fraud based thereon.