RENDERED:  NOVEMBER 20, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1020-MR
&
NO. 2018-CA-1064-MR

ALIBRO HOLDINGS, LLC                    APPELLANT/CROSS-APPELLEE

APPEAL AND CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.         HONORABLE CHARLES L. CUNNINGHAM, JR., JUDGE
ACTION NO. 17-CI-003944

THE FALLS AT OLD HENRY
CONDOMINIUM COUNCIL, INC.          APPELLEE/CROSS-APPELLANT

OPINION
AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  DIXON, KRAMER, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  The Falls at Old Henry Condominium Council, Inc.

(The Falls) filed this action against Alibro Holdings, LLC alleging that Alibro is a

developer and, therefore, responsible for the expense of top coating the roadways

serving condominium units built within The Falls' condominium project and for

making infrastructure improvements within the project as required by the Louisville Metro Planning Commission. Alibro argued that it was merely a builder and had no obligations as a developer.

On cross-motions for summary judgment, the trial court ruled that Alibro is the successor developer to The Falls condominium project and that if Alibro proceeds with building and selling the remaining units, it must do so as a developer and is required to maintain the roadways. However, the trial court ruled that because of the passage of time between when Alibro constructed condominiums within the condominium project and The Falls' claim that Alibro must pay for top coating the roadways, it would be inequitable to require Alibro to pay for the top coating.

We affirm in part, reverse in part, and remand. Although we agree with the trial court that Alibro cannot be forced to take on developer responsibilities based upon building and selling four units, we disagree with the trial court's interpretation of why. The elapse of time and the failure of The Falls to assert its rights is not what prevents Alibro from being forced to assume developer responsibilities. Instead, Alibro was never a developer because Central Bank could not convey such rights and responsibilities to Alibro when they had already expired. Under the terms of the master deed the developer rights and responsibilities expired five years from the date of the recording and the

undeveloped land had reverted to The Falls. As The Falls has objected to Alibro building new units without taking on developer responsibilities and Alibro is not a developer under the master deed, we disagree that the trial court could impose such responsibilities on Alibro going forward. If Alibro wishes to construct further condominiums on this site, it will be up to The Falls and Alibro to negotiate the terms of their relationship.

In December 2007, The Falls' condominium project was commenced by the developer of the project, The Ridge I, LLC. The lender for the project was Central Bank of Jefferson County. The Ridge prepared a master deed and declaration of condominium project regime that was recorded in the office of the Jefferson County Clerk on December 13, 2007. Pursuant to the master deed, twelve condominium units and certain common elements were dedicated and described with the Ridge having the right to construct more units in the future. It was contemplated that thirty-seven units would be built.

Pursuant to the master deed, the Ridge conveyed the land referred to as "Tract 3" to The Falls on December 12, 2007, shifting ownership of Tract 3 from the Ridge to The Falls. At that point, the Ridge only held the developer rights to build the remaining units in the condominium project.

Pursuant to Article II, Section 2.3 of the master deed, the common elements of the condominium regime are owned in common, appurtenant to each

unit's percentage of common interest that "shall not be altered without the acquiescence of the Owners representing all Units in the Regime." Article II, Section 2.4(d) of the master deed provides in part under the heading "Expandable Regime" that the initial condominium regime was expandable under the following terms:

> Developer hereby reserved for itself, its successors and assigns, for a period of five years from the date of the recording this Declaration, the right to execute on behalf of all contract purchasers, Unit Owners, mortgagees or other lien holders, or other parties claiming a legal or equitable interest in the Regime, any amendment, agreement or supplement that may be required to expand the Regime and to add additional real estate to the Regime . . . Developer, for itself, and for its successors and assigns, reserves an interest in any real estate, including the Regime and each Unit, for these purposes. This interest is reserved by Developer and the power of attorney hereby granted by each interest holder includes the right to amend the definition of "Property" to reflect the additional real estate made part of the Regime and to amend the percentage of common interest appurtenant to each Unit and otherwise to amend this Declaration to supplement the floor plans to accomplish the expansion of the Regime, as contemplated by this section.

Article VI, Section 6.2 provides time restrictions regarding the administration of the condominium regime stating:

> The administration of the Regime . . . is vested in the Developer until (i) 120 days from the date at least 95% of the Units contemplated for the Regime have been conveyed to third parties; (ii) until the Developer elects to surrender this power to the Unit owners; or (iii) until

-4-

five years after the date this Declaration is recorded, whichever occurs first.

Article VI, Section 6.3(a) explains that in administration of the regime, the developer has the duty to maintain, repair and replace all improvements in common elements. Article I, Section 1.2 defines "common elements" as including in (d) roadways. Article VII, Section 7.2 empowers the council to make assessments against units to defray the costs associated with maintaining the common elements. Article XI, Section 11.2 states:

> this Declaration may be amended from time to time by a majority of the Unit owners, effective only upon recording of the signed instrument setting forth the amendment. In addition, during Developer's period of control of the Regime, as set forth in section 6.2 of this Declaration, Developer may make such clarifying or correction amendments as are appropriate for or required by FHLMC, FNMA, HUD, FHA, VA or other similar program or secondary market lender or insurance.

The Ridge built thirty units before it had financial trouble in October 2011. Although Tract 3 had been conveyed to The Falls in December 2007 as a common element, on October 19, 2011, the Ridge attempted to convey Tract 3 (certain identified condominium units were excepted) in a deed in lieu of foreclosure to Central Bank. On March 27, 2012, through a reservation of special declarant rights under the master deed, Central Bank was purported to have gained the Ridge's developer rights. On June 19, 2013, Central Bank executed a special warranty deed, excepting the identified condominium units which had been

previously built and sold, that purported to convey the underlying land contained in Tract 3 to Alibro for $240,000.

In 2015, Alibro constructed four condominium units on Tract 3. On August 3, 2015, Alibro executed and recorded a seventh amendment[1] to the master deed that was recorded in the Jefferson County Clerk's office. In that document, Alibro is identified as the successor developer. Specifically, the seventh amendment states:

> Pursuant to Section 2.4 of the Declaration, the Developer reserved for itself and on behalf of any Unit owners and mortgagees in the Regime, the right to expand the Regime by creating additional units as part of the Regime.
>
> **NOW THEREFORE,** pursuant to its powers reserved in the Declaration, the Successor Developer hereby amends the Declaration to create certain additional Units as part of the Regime as follows:

The seventh amendment identifies the units built by Alibro as the successor developer to be included as part of the Regime.

An undated letter from The Falls' board of directors indicates that The Falls became aware that the developer rights under the master deed expired on December 12, 2012. This letter was written sometime after the construction of the four units by Alibro. However, during the construction of those units, there is no

---

[1] The record does not contain any previous amendments to the master deed.

evidence that Alibro or The Falls questioned Alibro's authority to build the units on Tract 3.

The four condominium units built by Alibro were sold by Alibro. Two units were conveyed in August 2015, one in December 2015, and one in August 2016.

This dispute arose after Alibro constructed and sold those four units and sought to construct the remaining units on Tract 3. Alibro maintained that it was a builder, not a developer, and it had no obligation to top coat the roadways and make infrastructure improvements to the condominium project. This would leave The Falls responsible for making these improvements. Despite that it declared itself to be a successor developer in the seventh amendment to the master deed and sold the additional units, Alibro argues the developer rights expired before the property was conveyed to it.

On July 27, 2017, The Falls filed a verified petition for declaration of rights pursuant to Kentucky Revised Statutes (KRS) 418.005 requesting that Alibro be named the successor developer, that Alibro be required to finalize the completion of the roads and infrastructure improvement, and to quiet title as to The Falls' exclusive right, title, ownership, possession, control, and use of the Tract 3 parcel of land. Alibro filed a response and counter-claim alleging that it was not

the successor developer and not responsible for top coating the roadways and infrastructure improvements.

Alibro filed a motion for summary judgment and The Falls responded with a motion for summary judgment. During the hearing on summary judgment, Alibro argued it was only a builder because the developer responsibilities had expired before it received the property from Central Bank. Alibro argued it inequitable for it to be forced to pay for top coating the roads when it had only built four units rather than the twenty-four units that the Ridge built, and it would cost around $35,000 to top coat the roads.

The Falls argued that it was unjust to allow Alibro to build and make money but not finish the development, explaining Alibro only had the right to build as a developer, and it took on the role of the developer when it built and in taking on that role it assumed certain obligations. The Falls argued that as the common owner it could sell off the raw land rather than allow it to be developed, but it had attempted to negotiate with Alibro.

The trial court questioned whether it would really be unjust, where most of the common elements were completed by the last developer, to require Alibro to top coat the road as that was almost the last step and Alibro had profited by constructing and selling the units. Alibro admitted that each unit had sold for between $350,000 and $450,000 but did not disclose how much of that was profit.

The trial court also noted that the privilege for building these units was paid to Central Bank and not The Falls, which only received the advantage that the additional units would then be responsible for paying fees to the association. The trial court questioned whether Alibro could buy the right to build without also assuming the obligations of a developer, noting that if all rights reverted to The Falls then Alibro had no right to build.

In its written opinion, the trial court concluded that Alibro could not purchase from Central Bank simply the right to build condominiums without regard to the obligation of a developer to pay for those expenditures required to be paid by the developer. However, the trial court found it would be inequitable to require payment by Alibro of those expenses because of the lapse of time after the existing condominiums were built and when The Falls sought to hold Alibro responsible for those expenses. Finally, the trial court ruled that if Alibro chooses to proceed with building and selling the remaining units, it must do so as a developer and provide all items the developer would provide, including top coating the roadways. The trial court designated its opinion as being final and appealable. Alibro appealed and The Falls cross-appealed.

When a trial court grants a motion for summary judgment, the standard of review for the appellate court is *de novo* because only legal issues are involved. *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705 (Ky.App.

2004).  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Kentucky Rules of Civil Procedure (CR) 56.03.  Although the movant bears the initial burden of demonstrating that there is no genuine issue of material fact in dispute, the party opposing the motion then has the burden to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial."  *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991) (citations omitted).  "If the summary judgment is sustainable on any basis, it must be affirmed."  *Fischer v. Fischer*, 197 S.W.3d 98, 103 (Ky. 2006).  We agree that these matters were appropriate for summary judgment as the facts are undisputed and it is only how the law applies to the facts that is in issue.

The interpretation of a contract, including whether it is ambiguous, is a question of law.  *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 105 (Ky. 2003).  "In the absence of ambiguity[,] a written instrument will be enforced strictly according to its terms."  *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966).  "In determining the proper interpretation of a deed, we look to the intentions of the parties which we deduce from the four corners of the instrument."

*Villas at Woodson Bend Condominium Ass'n, Inc. v. South Fork Development, Inc.*, 387 S.W.3d 352, 357 (Ky.App. 2012).

Alibro argues that it is not a developer because the developer rights had expired when Central Bank purported to assign those same rights to Alibro. Alibro relies on the general rule that an assignee can only receive those rights the assignor has to assign. *Whayne Supply Co. v. Morgan Const. Co.*, 440 S.W.2d 779, 782-83 (Ky. 1969).

The master deed is not ambiguous. Specific time limits were set out in it as to when developer rights were retained and when the property became solely owned by The Falls. Alibro did not acquire the right to build on Tract 3 until more than six months had passed after the expiration of the time limitations set out in both Article II, Section 2.4(d) and Article VI, Section 6.2(iii). *Compare with Villas at Woodson Bend Condominium Ass'n, Inc.*, 387 S.W.3d at 359 (interpreting a master deed and explaining that a four-year marketing interval did not restrict the developer to completing construction of the contemplated units to that period of time).

Although The Falls attempts to rely upon the seventh amendment, arguing that Alibro thereby assumed both the rights and responsibilities of a developer, the seventh amendment was recorded beyond the time limitations set forth in the original developer's master deed and there is no indication that any

-11-

previous amendments could or did extend these time limitations. No matter Alibro's actions in designating itself as a successor developer, this designation on its own could not serve to revive expired developer rights. Although The Falls acceded to allowing Alibro to build additional condominiums in Tract 3, this action did not make Alibro a "developer" thereby responsible for top coating the roadways and making infrastructure improvements. *See S.W. Bardill, Inc. v. Bird*, 346 S.W.2d 25, 26-27 (Ky. 1961) (explaining that assignees' royalty interest in an oil and gas lease which ended through a lapse of time could not thereafter receive royalties from new lessees under a new lease because the assignees' rights were extinguished when the lease lapsed and those rights were not revived by the new lease).

The master deed also unambiguously does not support Alibro's position that it has rights as a builder. Alibro has identified nothing in the master deed which would allow the assignment from Central Bank to imbue it with the right to build and sell units. Essentially, Central Bank's assignment of the property to Alibro after the five-year period was ineffective to convey any rights to Alibro either as a developer or a builder because all rights to the property reverted to The Falls prior to this time. Therefore, Alibro had no right to build or sell those units, but it also had no responsibilities as a developer to complete common elements.

Once Alibro started to build, the Falls could have sought an injunction against Alibro and sought to quiet title. However, The Falls took no action at that time.

The Falls is not now disputing that Alibro had the right to construct the four units or sell them; instead it is asserting that because Alibro acted as a developer, it now has the obligations of a developer. Therefore, we will not address whether or not The Falls currently has any recourse against Alibro for its building and selling of the four units as that issue is not before us.

We disagree with the trial court that Alibro has any right to build the remaining units and that by doing so it would thereby assume developer responsibilities now that it knows what The Falls' expectations are. Just as Alibro could not succeed to the rights and responsibilities of a developer before, it cannot do so now. Should Alibro wish to build these units, it must negotiate with The Falls as the property owner to do so. The association can amend the master deed to allow for further development. Based upon the letter in the record, it appears that The Falls was willing at one point to negotiate for such an outcome if Alibro was willing to take on developer responsibilities. We also offer no opinion as to whether Alibro has any recourse against Central Bank for selling it property that it no longer had any right to develop or build upon, as that issue and potential party is not before us.

Accordingly, we affirm the Jefferson Circuit Court's opinion to the extent that it rules that Alibro is not obligated to fulfill developer responsibilities after completing and selling the four units. We reverse and remand the portion of the Jefferson Circuit Court's opinion ruling that Alibro has the status of a developer under the master deed and the right to build the outstanding three units if it assumes responsibility as a developer.

ALL CONCUR.

BRIEF FOR APPELLANT/CROSS-APPELLEE:

Mark J. Sandlin
Louisville, Kentucky

BRIEF FOR APPELLEE/CROSS-APPELLANT:

Richard Hornung
Louisville, Kentucky